277 P.3d 988

**ALAKAʻI NA KEIKI, INC.,**
**Petitioner/Plaintiff–**
**Appellant,**

v.

**Kathryn MATAYOSHI,[1] in her official capacity as Superintendent of Education, Respondent/Defendant–Appellee.**

**No. SCWC–29742.**

Supreme Court of Hawaiʻi.

May 11, 2012.

---

1. Pursuant to Hawaiʻi Rules of Appellate Procedure (HRAP) Rule 43(c)(1), Kathryn Matayoshi, the current Superintendent of Education, has been substituted for Patricia Hamamoto, the Su-

perintendent of Education at the time this case was decided by the circuit court of the first circuit.

Perry Confalone, (Carlsmith Ball LLP), for petitioner.

Deirdre Marie–Iha, deputy solicitor general, for respondent.

ACOBA, DUFFY, and McKENNA, JJ.; with RECKTENWALD, C.J., Concurring and Dissenting, with whom NAKAYAMA, J., Joins.

Opinion of the Court by ACOBA, J.

We hold that decisions of administrative officers of the State of Hawai'i Department of Education (the DOE), headed by Respondent/Defendant–Appellant Kathryn Matayoshi, (Respondent),[2] to reject the proposal of Petitioner/Plaintiff–Appellant Alaka'i Na Keiki, Inc. (Petitioner) that responded to a request for proposals (RFP) to provide health and human services under contracts pursuant to Hawai'i Revised Statutes (HRS) chapter 103F, are subject to judicial review under the circumstances of this case. In so holding, we conclude first that, as construed, HRS chapter 103F is not unconstitutional for violating the doctrine of separation of powers as Petitioner contends, because although the DOE, in interpreting and applying provisions of HRS chapter 103F and in deciding disputes to which it is a party, exercises aspects of the judicial power, its decisions are subject to judicial review under the declaratory judg-

**2.** Respondent is sued in her official capacity as Superintendent of the DOE.

ment statute, HRS § 632–1 (1993). Second, we conclude that Petitioner's request for a declaratory judgment is moot to the extent the subject contracts have been awarded and their terms expired. Third, we conclude that Petitioner's claim for alleged negligence by the DOE in evaluating Petitioner's proposal and in deciding the dispute with Petitioner is barred under HRS chapter 662, the State Tort Liability Act (STLA), because the DOE's conduct herein is not analogous to "a recognized claim for relief against a private person." *Kaho'ohanohano v. State,* 117 Hawai'i 262, 282, 178 P.3d 538, 558 (2008). Fourth, we conclude that Petitioner's claim for injunctive relief, premised on the DOE's alleged faulty administration of the contract process, is moot inasmuch as we interpret such process in HRS chapter 103F as subject to judicial review.

Accordingly, we vacate the June 16, 2011 judgment filed herein by the Intermediate Court of Appeals (ICA) [3] and the March 4, 2009 judgment of the circuit court of the first circuit (the court).[4] We remand this case to the court, with instructions, in respect to the claims in Petitioner's second amended complaint, to enter judgment (1) denying the relief sought in Counts I, II and IV as moot and (2) in favor of Respondent on Count III.

## I.

### A.

In October 2004, the DOE, as the purchasing agency, issued an RFP "to solicit private providers to provide intensive instructional support service to eligible students[.]" Services would address the students' educational, behavioral and therapeutic needs. The contract term ran from July 1, 2005, to June 30, 2006. Evaluation of proposals was to be conducted in three phases. First, the proposal would be reviewed to ensure proposal requirements were met. Second, the applicant would be evaluated, and third, a recommendation of whether to grant an award would be made.

The RFP established weighted evaluation criteria to determine which proposals would qualify for contracts with the DOE. "[I]n order to be eligible for the contract award," the proposal had to "receive a score of 70 points or better[.]" The RFP explained that "[a]ny applicant may file a protest ... against the awarding of the contract[.]" Only the following matters could be protested: "A state purchasing agency's failure to follow procedures established by [HRS] chapter 103F[,]" "[a] state purchasing agency's failure to follow any rules established by [HRS c]hapter 103F[,]" or "[a] state purchasing agency's failure to follow any procedure, requirement or evaluation criterion in a request for proposals issued by the state purchasing agency."

In January 2005, Petitioner submitted its proposal. On March 31, 2005, Andrell Aoki, a "Fiscal Specialist," notified the applicants that a list of qualified providers had been selected. Petitioner was informed that its proposal was rejected because the DOE determined that it "failed to meet the minimum score of 70 to be entered into the pool of providers." Petitioner received 51.2 points out of 100 possible points.

On April 5, 2005, Petitioner filed a notice of protest stating that the DOE failed to apply proposal evaluation criteria fairly and competently, thereby violating HRS § 103F–402(b) (Supp.2004),[5] and Hawai'i Administra-

---

3. The published opinion was authored by Presiding Judge Daniel R. Foley, and joined by Associate Judge Alexa D.M. Fujise and Circuit Judge Patrick W. Border, in place of Chief Judge Craig H. Nakamura and Associate Judge Katherine G. Leonard, both recused.

4. The Honorable Gary W.B. Chang presided.

5. HRS § 103F–402 provides in its entirety as follows.

§ 103F–402 **Competitive purchase of services.** (a) *State* agencies to which the legislature has appropriated funds for the purchase of health and human services shall solicit proposals to provide health and human services by purchase of health and human services contracts, by publishing a notice requesting the submission of health and human service proposals. Notice of the request for proposals shall be given a reasonable time before the date set forth in the request for submission of proposals. The policy board shall adopt rules which specify:
 (1) The form of the notice;
 (2) What constitutes a reasonable interim between notice and the proposal submission deadline; and

tive Rules (HAR) § 3–143–205(e)[6] & (f)[7] (2004). Petitioner also complained that the RFP failed to explain any criterion for the consideration of multiple award contracts, violating HAR § 3–143–206(d),[8] and that the DOE, as the purchasing agency, failed to follow RFP procedures and requirements because the DOE made factual errors and drew inaccurate inferences in evaluating the proposal, which "materially prejudiced" Petitioner.

On April 29, 2005, the DOE informed Petitioner that all awards had been "rescinded" and that all proposals were to be rescored due to "concerns" raised in one or more pending protests.

> (3) How the notice is to be published, including but not limited to, whether the publication is to be completed in a newspaper of general circulation, by mail, through a public or private telecommunications network, or any other method or combination of methods which the board deems appropriate.
> (b) *The request shall state all criteria which will be used to evaluate proposals*, and the relative importance of the proposal evaluation criteria.
> (c) Any applicant who has a question regarding a request may submit the question to the head of the purchasing agency, or a designee, prior to the proposal submission deadline. The head of the purchasing agency, or a designee, shall provide a response in the form of a clarification, or an amendment of the request, that shall be made available to all those who picked up a request.
> (d) Proposals shall be opened so as to avoid disclosure of contents to competing applicants during the process of proposal evaluation. A register of proposals shall be prepared and available for public inspection after proposal submission.
> (e) *If stated in the request, discussions, as provided by rule, may be held with applicants* for the purpose of clarification to assure full understanding of, and responsiveness to, the solicitation requirements. *Applicants shall be accorded fair and equal treatment with respect to any opportunity for discussion and revision of proposals, and revisions may be permitted after submissions and prior to award for the purpose of obtaining best and final offers.* In conducting discussions, there shall be no disclosure of any information derived from proposals submitted by competing applicants.
> (Emphases added.)

6. Petitioner cited HAR § 3–142–205 in its notice of proposal, but such provision of the HAR does not exists. HAR chapter 3–140 through 3–147 and 3–149 were amended in January 2006, *see*

On May 12, 2005, the DOE informed Petitioner that its proposal had been rescored, but that Petitioner had not been selected. Petitioner's score increased 14 points, to 65.2 points, but was still 4.8 points short of the 70–point score necessary to be included in the qualified pool of providers.

### B.

On May 18, 2005, Petitioner filed an amended Notice of Protest,[9] stating that the DOE "failed to promulgate and apply evaluation criteria fairly and competently." According to Petitioner, the DOE did not adhere to RFP procedures and requirements established by statute,[10] rule,[11] and the

http://www4.hawaii.gov/spoh/har/hi_adminrulesch103f_bkgrd.htm HAR § 3–142–205(e), and, thus, the relevant section of HAR chapter 3–143 is the prior version, which was in effect since June 1999. This version was attached to Petitioner's opening brief. HAR § 3–143–205(e) stated as follows:

> *The evaluation of proposals shall be based solely upon the evaluation criteria and their relative priorities as established in the request for proposals.* A written evaluation shall be made for each proposal based on either written comments or a numerical rating system. After the award and execution of a contract or contracts in the case of multiple awards is awarded and executed, the written evaluations for all proposals received shall be made available for public inspection in the procurement file.
> (Emphasis added.)

7. HAR § 3–143–205(f) provided that "[a]fter all of the proposals have been evaluated, the proposals shall be ranked from most advantageous to least advantageous, based on the evaluations each proposal received."

8. HAR § 3–143–206(d) provided that:

> "[a] multiple award contract may be made whenever the purchasing agency deems that it is in the best interests of the state. Only the providers whose proposals are evaluated as the most advantageous over-all, by geographical area, or by other criterion explained in the request for proposals, shall be considered for a multiple award. If, for example, a multiple award is to be made to two providers, then only the providers with the two highest-ranked proposals may be considered, and so on."

9. Petitioner filed a Notice of Protest on May 17, 2005.

10. Petitioner contended that the purchasing agency failed to follow procedures and require-

RFP [12] by making factual errors and drawing inaccurate references in evaluating and re-scoring the proposal.

On May 31, 2005, a protest scheduling order was issued, setting forth the time for Petitioner to file its written protest and for the purchasing agency to respond. Pursuant to HAR § 3–148–502 (2005),[13] each party to the protest was entitled to ask the opposing party for records and information. The scheduling order also established deadlines for clarification requested by either party. The contract award was suspended during the protest.

On June 9, 2005, Petitioner requested clarification under HAR § 3–148–502. Petitioner sought, *inter alia,* copies of the proposals of all applicants, the evaluation forms for each applicant, and the decisions as to all applicants. On June 24, 2005, the DOE responded by refusing to identify or produce the requested information on the ground that the information had to be kept confidential, until the contract was executed. (Citing HAR §§ 3–143–604 [14] & 3–143–616 [15] (1999).)

On July 15, 2005, Petitioner sent a "notice of dispute" to the DOE. Petitioner noted that HAR § 3–148–103(a) allows an applicant to protest the "purchasing agency's failure to

follow any procedure, requirement, or evaluation criterion in a request for proposals[,]" and that HRS § 103F–504 [16] provides that the procedures and remedies under the administrative rules "shall be the exclusive means available for persons aggrieved in connection with the award of a contract to resolve their concerns."

According to Petitioner, the "exclusivity of remedies" provision in HRS § 103F–504, combined with the HAR, "set up a catch-22" because, although "a protester is entitled to determine whether evaluators properly followed evaluation criteria[,]" under the HAR, a protester would have no access to this information until after the contract was awarded. At this point, "there would be no recourse because the agency decision on the protest is purportedly final." (Citing HAR § 3–148–306(c)(4).[17])

On July 18, 2005, Petitioner filed its formal protest alleging that the DOE, as the purchasing agency, failed to follow the applicable procedures, to properly evaluate Petitioner's proposal, to provide the discovery requested, and to establish criteria for justifying multiple award contracts. On July 27, 2005, the DOE responded to the protest, contending that Petitioner's proposals did not meet or

---

ments established by HRS §§ 103F–402(b) & (e) (Supp.2005), 103F–411, and 104F–511.

**11.** Petitioner contended that the purchasing agency failed to follow procedures and requirements established by HAR §§ 3–143–205, 3–143–206, 3–143–302, 3–143–403, and 3–148–202.

**12.** Petitioner contended that the purchasing agency failed to follow procedures and requirements established by sections II and IV of the RFP. Section II listed the general requirements for a proposal (i.e., specific qualification regarding licensure and accreditation) and section IV was the procurement timetable.

**13.** HAR § 3–148–502, entitled "Requests for Clarification," provides that "[t]he protestor may make a written request for access to the purchasing agency's relevant procurement records, and the purchasing agency shall provide such access except to the extent that information is required or permitted to be withheld by law." HAR § 3–148–502(b). Furthermore, both parties "may make written requests for additional relevant information to each other[,]" and "[p]arties from whom additional information is requested shall respond by producing such additional information except to the extent that such information is

required or permitted to be withheld by law." HAR § 3–148–502(c).

**14.** HAR § 3–143–604, entitled "Access to Documents and Confidentiality[,]" provided, *inter alia,* that "[a]fter submission to a purchasing agency, the confidentiality of proposals, modifications to proposals, and withdrawals of proposals" shall be kept confidential.

**15.** HAR § 3–143–616(a) provided that "[t]he procurement file for every competitive purchase of service procurement shall be available for public inspection after the execution of a contract[.]"

**16.** HRS § 103F–504, entitled *"Exclusivity of remedies* [,]" provides in its entirety that *"[t]he procedures and remedies provided for in this part, and the rules adopted by the policy board, shall be the exclusive means available for persons aggrieved in connection with the award of a contract to resolve their concerns."* (Emphases added.)

**17.** HAR § 3–148–306(c)(4) provides that "[e]very decision issued in resolution of a protest shall contain" *"[a] statement that the decision is final and conclusive, unless a timely request for reconsideration is made."* (Emphasis added.)

were inconsistent with the requirements in the RFP. Petitioner submitted a reply, contending that its discovery was impeded by the DOE's refusal to provide documents regarding the proposals submitted by other bidders.

On August 9, 2005, Christian H. Butt, a "Procurement & Contracts Specialist" of the Office of Business Services of the DOE, denied the protest. On August 17, 2005, Petitioner submitted a request for reconsideration. On August 25, 2005, Rae M. Louie, "assistant superintendent," denied the request for reconsideration, finding that the purchasing agency made no error.

The contracts were then awarded.

**18.** This court affirmed the court's holding that "the [court] did not err in ruling that it lacked HRS chapter 91 jurisdiction in the instant case." *Alaka'i Na Keiki, Inc. v. Hamamoto (Alaka'i I)*, No. 27559, 113 Hawai'i 210, 2007 WL 158980, at *1 (Jan. 22, 2007) (SDO). This court reasoned that inasmuch as HRS § 91–14(a) (1993) allows a person aggrieved by a final decision and order in a *contested case* to appeal that order, and a contested case is defined as "a proceeding in which the legal rights, duties, or privileges of specific parties are *required by law* to be determined after an opportunity for *agency hearing* [,]" HRS § 91–1(5) (1993), and an agency hearing "refers only to such hearing held by an agency immediately prior to a judicial review of a contested case[,]" HRS § 91–1(6) (1993), HRS chapter 91 did not provide judicial review for Petitioner. (Emphases added.) This was because "submission of [Petitioner's] written protest, the DOE's written response, and [Petitioner's] written reply did not constitute a 'hearing' within the meaning of HRS chapter 91[.]" *Id.* at *2. Additionally, this court noted that because neither HRS chapter 103F nor HAR chapter 3–148 mandate a hearing prior to deciding a protest, the court lacked jurisdiction. *Id.* (Citing *Bush v. Hawaiian Homes Comm'n*, 76 Hawai'i 128, 134, 870 P.2d 1272, 1278 (1994)) ("If the statute or rule governing the activity in question does not mandate a hearing prior to the administrative agency's decision-making, the actions of the administrative agency are not 'required by law' and do not amount to 'a final decision or order in a contested case' from which a direct appeal to circuit court is possible." (Citations omitted.))

**19.** The contracts at issue expired on June 30, 2006. The contracts were extended for one year, until June 30, 2007. The DOE then issued a new request for proposals and entered into new contracts with various providers for similar services, including Petitioner.

On appeal to the ICA, Petitioner argued, "Assuming the court based its decision [as to Peti-

## C.

Petitioner subsequently filed an appeal to the court under HRS chapter 91. The court dismissed the action for lack of jurisdiction and entered judgment on October 10, 2005, which was affirmed by this court on January 22, 2007.[18]

## D.

On September 16, 2005, Petitioner filed its complaint in the instant case against Hamamoto, and on September 20, 2005, Petitioner filed its First Amended Complaint.[19] Petitioner was allowed to amend its First Amended Complaint, and on November 13, 2006, filed its Second Amended Complaint.

tioner's request for declaratory and injunctive relief] in whole or in part on mootness, the court clearly erred." The ICA noted that "in its oral indication as to how it would rule, [the court] agreed with [Petitioner] that the issue of constitutionality was not moot, stating that [c]laims for declaratory relief regarding, one, the constitutionality of chapter 103F and, number two, [Respondent's] alleged failure to comply with the applicable procedural law are not moot since the alleged violations are capable of repetition.' " *Alaka'i Na Keiki, Inc. v. Hamamoto*, 125 Hawai'i 200, 209, 257 P.3d 213, 222 (App.2011) (*Hamamoto*). The ICA concluded that the "court properly considered [Petitioner's] claims for declaratory and injunctive relief and did not base its ruling on mootness."

The ICA was correct. In *Kaho'ohanohano v. State*, 114 Hawai'i 302, 332, 162 P.3d 696, 726 (2007), it was explained that

"[a] case is moot if it has lost its character as a present, live controversy of the kind that must exist if courts are to avoid advisory opinions on abstract propositions of law. The rule is one of the prudential rules of judicial self-governance founded in concern about the proper—and properly limited—role of the courts in a democratic society. We have said the suit must remain alive throughout the course of litigation to the moment of final appellate disposition to escape the mootness bar."

(Quoting *Kona Old Hawaiian Trails Group v. Lyman*, 69 Haw. 81, 87, 734 P.2d 161, 165 (1987).) (Emphasis omitted.) Because the multiple contracts at issue in this case have been awarded and fully performed, there is no live controversy. However, the instant case falls within an exception to the mootness doctrine because it "involv[es] a legal issue which is capable of repetition, yet evading review[.]" *Id.* at 333, 162 P.3d at 727 (internal quotation marks and citation omitted). "The phrase, 'capable of repetition, yet evading review,' means that a court will not dismiss a case on the grounds of mootness where a challenged governmental ac-

The Second Amended Complaint contained four counts. In Count 1, Petitioner asserted that the denial of its request for reconsideration must be vacated because the DOE's actions were unlawful, and the court may review and order appropriate relief for the DOE's unlawful actions pursuant to its express and inherent powers under article VI, section 1 of the Hawai'i Constitution [20] and HRS § 603–21.9.[21] In Count 2, Petitioner sought a declaratory judgment pursuant to HRS § 632–1 [22] that, *inter alia*, (a) "to the extent" HRS § 103F–504 "preclude[s] direct judicial review of the DOE's final decision, it unconstitutionally delegates judicial power to an administrative agency and is thus void and invalid[,]" and (b) HRS chapter 103F and its accompanying administrative rules are unconstitutional or otherwise invalid because they "permit the DOE to adjudicate the pro-

priety of its own actions[.]" In Count 3, Petitioner alleged that Respondent was negligent in preparing the RFP, evaluating the proposals, and deciding Petitioner's request for reconsideration, and that Petitioner suffered damages as a result of Respondent's negligence. In Count 4, Petitioner sought a preliminary and permanent injunction enjoining the DOE from continuing to administer any and all health and human services contracts, and urged the court to appoint a special master to oversee health and human services procurement "until such time as defects in the statute and the administrative rules can be cured legislatively and administratively."

### E.

In May 2008,[23] Respondent moved for judgment on the pleadings or, in the alter-

tion would evade full review because the passage of time would prevent any single plaintiff from remaining subject to the restriction complained of for the period necessary to complete the lawsuit[.]" *Id.* (internal quotation marks and citations omitted). Here, the instant legal issue is capable of repetition inasmuch as the State will continue to award health and human services contracts. By the time the issue reaches this court, the contracts will most often have been awarded and fully executed, as in this case.

**20.** Article VI, section 1 of the Hawai'i Constitution provides that "[t]he judicial power of the State shall be vested in one supreme court, one *intermediate appellate court, circuit courts, district courts and in such other courts as the legislature may from time to time establish. The several courts shall have original and appellate jurisdiction as provided by law* and shall establish time limits for disposition of cases in accordance with their rules." (Emphasis added.)

**21.** HRS § 603–21.9(6) provides in pertinent part that *circuit courts* have the power "[t]o make and award such judgments, decrees, orders, and mandates, issue such executions and other processes, and do such other acts and take such other steps as may be necessary *to carry into full effect the powers which are or shall be given to them by law or for the promotion of justice in matters pending before them.*" (Emphases added.)

**22.** HRS § 632–1 provides as follows:
 **Jurisdiction; controversies subject to.** *In cases of actual controversy, courts of record, within the scope of their respective jurisdictions, shall have power to make binding adjudications of right,* whether or not consequential relief is, or at the time could be, claimed, and no action or proceeding shall be open to objection on the

ground that a judgment or order merely declaratory of right is prayed for[.] *Controversies involving the interpretation of deeds, wills, other instruments of writing, statutes, municipal ordinances, and other governmental regulations, may be so determined,* and this enumeration does not exclude other instances of actual antagonistic assertion and denial of right.
 Relief by declaratory judgment may be granted in civil cases where an actual controversy exists between contending parties, or where the court is satisfied that antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation, or where in any such case the court *is satisfied that a party asserts a legal relation, status, right, or privilege in which the party has a concrete interest and that there is a challenge or denial of the asserted relation, status, right, or privilege by an adversary* party who also has or asserts a concrete interest therein, and the court is satisfied also that a declaratory judgment will serve to terminate the uncertainty or controversy giving rise to the proceeding. *Where, however, a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed; but the mere fact that an actual or threatened controversy is susceptible of relief through a general common law remedy, a remedy equitable in nature, or an extraordinary legal remedy, whether such remedy is recognized or regulated by statute or not, shall not debar a party from the privilege of obtaining a declaratory judgment in any case where the other essentials to such relief are present.*
 (Emphases added.)

**23.** Between November 2006 and May 2008, there were discovery disputes.

native, for summary judgment pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rules 7,[24] 12(c),[25] and 56 [26] (2000) on all counts. Respondent argued, *inter alia,* that Petitioner did not meet its burden of showing that HRS chapter 103F is unconstitutional. According to Respondent, Petitioner "simply c[ould not] prove that the Hawai'i State Constitution precludes the ability of the legislature to enact HRS § 103F–504," the "exclusivity of remedies" provision. In Respondent's view, "[a]rticle VI, section 1 concerning judicial power clearly provides that the courts only have original and appellate jurisdiction as provided by law[,]" and thus, "the legislature is free to decide what power if any to invest in the judiciary concerning the review of [HRS c]hapter 103F[.]" Respondent argued that the legislature did not invest any power in the judiciary inasmuch as the legislature decided that the procedure under HRS chapter 103F was the " '[e]xclusive means available for persons aggriev[ed] in connection with the award of a contract to resolve their concerns'." (Quoting HRS § 103F–504). Regarding Petitioner's negligence claim, Respondent maintained, *inter alia,* that HRS chapter 103F did not afford Petitioner a private right of action to bring suit.

On May 9, 2008, Petitioner filed its motion for summary judgment. Petitioner argued that HRS chapter 103F was facially invalid on two grounds, that it "empowers a government agency to determine the propriety and legality of its own procurement actions, including the disposition of protests[, and] as applied to the DOE, it erroneously designates the DOE superintendent to serve as a neutral in deciding protests and to sit in judgment of her protest decision on reconsideration." Petitioner contended that HRS

chapter 103F is "invalid because it expressly requires an agency head to determine with finality the propriety and legality of her agency's procurement agencies, including the disposition of protests." (Citing, *inter alia, HOH Corp. v. Motor Vehicle Indus. Licensing Bd., Dep't. of Commerce & Consumer Affairs,* 69 Haw. 135, 143, 736 P.2d 1271, 1276 (1987)).

On June 12, 2008, the court held a hearing on the competing motions. As to Petitioner's challenge to the constitutionality of HRS chapter 103F, the court ruled, "the finality of the chief procurement officer's decision on a request for reconsideration is not an unconstitutional delegation of adjudicatory power of the judiciary." However, the court said it was "inclined" to grant Petitioner injunctive relief prohibiting Respondent from having any individual other than the chief procurement officer decide requests for reconsideration under HRS § 103F–502 (Supp.2008). Additionally, the court gave its "inclination" that "[t]here is no private right of action under [HRS c]hapter 103F, no tort duty is imposed by [HRS c]hapter 103F, [and] therefore there is no cause of action for damages under [c]hapter 662." The court indicated it was also "inclined" to deny all other claims of Petitioner, explaining "the court is abiding by the legislature's mandate that the decision made upon reconsideration is final, so this [c]ourt is not going to be tempted to start to look at the underlying merits [ ]."

On October 21, 2008, the court issued an order denying Petitioner's motion for summary judgment, without including any language that only the chief procurement officer could decide the motion for reconsideration. On October 29, 2008, the court granted Respondent's motion for summary judgment,

---

**24.** HRCP Rule 7(b)(1) provides in pertinent part that "[a]n application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought."

**25.** HRCP Rule 12(c) provides that, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to

and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

**26.** HRCP Rule 56(b) provides in pertinent part that "[a] party against whom a claim ... is asserted or a declaratory judgment is sought may move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof[.]"

"to the extent that summary judgment is granted in favor of [Respondent] and against [Petitioner]." On March 4, 2009, judgment was entered "in favor of [Respondent] and against [Petitioner], upon Counts I, II, III, [and] IV of the Second Amended Complaint." All other claims were dismissed with prejudice.

## II.

### A.

Petitioner filed a notice of appeal on April 3, 2009. On appeal to the ICA, Petitioner argued, *inter alia,* that (1) HRS chapter 103F is unconstitutional because it delegates to an agency judicial power to interpret the law[27] and determine with finality a protestor's legal rights and the legality of an agency's conduct, (citing *HOH,* 69 Haw. at 143, 736 P.2d at 1276); (2) under the separation of powers doctrine, the power to determine with finality the meaning of the law and the legality of an agency's conduct resides with the judiciary, and the legislature's "clear[ ] inten[t] that the DOE would be the final arbiter of the rights of aggrieved persons" violates the separation of powers doctrine; (3) the court had authority to review the validity of HRS chapter 103F pursuant to HRS § 632–1 or HRS § 603–21.9(6); (4) assuming, *arguendo,* HRS chapter 103F is constitutional, the court still had authority to scrutinize the DOE's actions within the context of a declaratory judgment action or in the context of the court's general authority described in HRS § 603–21.9(6); and (5) the DOE was negligent and the STLA, HRS § 662–15 (Supp.2009), allowed Petitioner to bring a negligence claim against the DOE.

### B.

The ICA rejected Petitioner's arguments. According to the ICA, because HRS § 103F–504 provides that the protest procedure "shall be the *exclusive means* available for persons aggrieved in connection with the award of a contract to resolve their con-

cerns[,]" by its terms, HRS "[c]hapter 103F does not allow for judicial review." *Hamamoto,* 125 Hawai'i at 206, 257 P.3d at 219 (emphasis in original).

As to Petitioner's second argument regarding separation of powers, the ICA observed that Petitioner acknowledged HRS chapter 103F indicated that "the Hawai'i Legislature ... clearly intended for DOE to be the final arbiter in contract award protests." *Id.* According to the ICA, " 'the legislature has the power to establish the subject matter jurisdiction of our state court system'," *id.* (quoting *Sherman v. Sawyer,* 63 Haw. 55, 57, 621 P.2d 346, 348 (1980)), and "in enacting [HRS c]hapter 103F, [the legislature] determined that the judiciary had no power to review procurement grievance procedures under [HRS c]hapter 103F." *Id.*

In addition, the ICA declared that, when a party challenges the constitutionality of a statute, that party "has the burden of showing unconstitutionality beyond a reasonable doubt." *Id.* at 207, 257 P.3d at 220 (internal quotation marks and citation omitted). The ICA determined that Petitioner failed to meet its burden of proving that HRS chapter 103F violated the separation of powers doctrine.

As to Petitioner's third argument, that an administrative agency could not adjudicate the propriety of its own actions, the ICA determined that "an administrative agency does not have the authority to decide if its actions are constitutional[,] but [HRS c]hapter 103F does give an administrative agency the authority to decide if its actions are otherwise proper." *Id.* The ICA distinguished *HOH,* reasoning that there, the issue "was not the propriety of procedural actions, but, rather, the constitutionality of a statute[.]" *Id.*

As to Petitioner's fourth argument regarding the court's authority to review whether the DOE exceeded its authority, the ICA reasoned that neither HRS § 632–1 nor HRS § 603–21.9(6) gave the court authority to review the DOE's actions. According to the

---

27. In this regard, Petitioner maintained that HRS chapter 103F " 'subverts a fundamental precept of American jurisprudence: that [i]t is emphatically the province and the duty of the

judicial department to say what the law is[.]' " (Quoting *Marbury v. Madison,* 5 U.S. 137, 177, 1 Cranch 137, 2 L.Ed. 60 (1803)).

ICA, HRS § 632–1 " 'generally endorses declaratory relief in civil cases,' " but " 'disallows such relief where a statute provides a special form of remedy for a specific type of case.' " *Id.* (quoting *Travelers Ins. Co. v. Hawaii Roofing, Inc.*, 64 Haw. 380, 386, 641 P.2d 1333, 1337 (1982) (internal quotation marks, ellipsis, brackets, and footnote omitted)). In the ICA's view, because HRS chapter 103F provided a " 'statutory remedy' " for a " 'specific type of case[,]' " "namely, the protest process under HRS §§ 103F–501 through 103F–504[,]" "declaratory relief under HRS § 632–1 is unavailable[.]" *Id.* (citing *Travelers Ins.*, 64 Haw. at 386–87, 641 P.2d at 1337–38). As to HRS § 603–21.9(6), the ICA determined that it "does not give the circuit court jurisdiction to rule on a claim when the statute limits review exclusively to an administrative body." *Id.* at 207–208, 257 P.3d at 220–21.

As to Petitioner's fifth argument alleging negligence on Respondent's behalf, the ICA determined that HRS chapter 103F does not provide a private right of action. The ICA determined that " '[t]he legislative history supports the limitations on court challenges' " where HRS chapter 103F intended a " 'simpler, standardized process' " for the procurement of health and human services. *Id.* at 207–208, 257 P.3d at 221–22 (quoting S. Stand. Comm. Rep. No. 1465, in 1997 Senate Journal, at 1447–48).

According to the ICA, because the "statutory language clearly indicates the intent of the [l]egislature to deny a private right of action[,]" "there is no action in tort[,]" and because "there is no private right of action under [HRS c]hapter 103F, there is also no cause of action for damages under HRS [c]hapter 662." *Id.*

On June 16, 2011, the ICA entered judgment affirming the judgment of the court. On September 14, 2011, Petitioner filed its Application for Writ of Certiorari (Application).

### III.

Petitioner lists the following questions in its Application:

1. Whether [HRS c]hapter 103F represents an unconstitutional delegation of judicial power to an executive agency and is therefore invalid under [a]rticle VI section 1 of the Hawai'i [C]onstitution.

2. *Assuming* [HRS c]hapter 103F is unconstitutional, did the ICA err in affirming dismissal of [Petitioner]'s tort action against the [DOE] for negligent administration of the constitutionally defective law pursuant to the State Tort Liability Act ( [HRS] § 662–15(1)).

3. Assuming *arguendo,* that [HRS c]hapter 103F is constitutional, did the ICA err in ruling that the legality of the DOE's actions in administering the statute [was] not subject to judicial review pursuant to the [ ] court's inherent judicial powers?

(Emphasis added.)

Respondent filed a Response to Petitioner's Application (Response) on September 29, 2011.

### IV.

### A.

Regarding its first question, Petitioner raises a constitutional question implicating Respondent's actions. Petitioner contends that (1) the presumption that statutes are constitutional, as applied by the ICA, "does not apply to laws which '... impinge on fundamental rights expressly or impliedly granted by the constitution[,]' " (quoting *Peroutka v. Cronin,* 117 Hawai'i 323, 326, 179 P.3d 1050, 1053 (2008)), and because HRS chapter 103F denies Petitioner the "fundamental right of judicial review of an agency decision determining [its] legal rights[,]" it is presumptively unconstitutional; and (2) the ICA erroneously equated the concept of judicial review with the statutory concept of a right to appeal, and, "[i]f left to stand, ... the separation of powers implicit in the Hawai'i [C]onstitution c[ould] be nullified by legislative fiat[ ]" in that the legislature "could endow any administrative agency with unreviewable judicial power to interpret the law and finally adjudicate the legal rights of petitioners as well as whether the agency acted unlawfully."

In response to Petitioner's first question, Respondent counters that (1) *Peroutka* is inapplicable and the ICA applied the correct standard to determine the constitutionality of a statute, and (2) because it is well settled that the right to appeal is purely statutory and exists only when constitutionally or statutorily established, "[t]here is nothing wrong" with the legislature foreclosing the ability "to appeal the determination made by an agency under HRS chapter 103F." [28]

### B.

With respect to Petitioner's first contention, Petitioner does not cite any authority that would support the proposition that there is a *specific* fundamental right to judicial review of an agency decision that determines the legal rights of a party. Inasmuch as HRS chapter 103F cannot be said to deny such a specific right, it is not "presumptively unconstitutional." [29] Therefore, the ICA applied the correct standard of review, that is, that HRS chapter 103F is presumptively constitutional. However, if the legislature delegates judicial power and precludes judicial review of the agency's decision, it may raise separation of powers questions, as discussed *infra*.

### C.

■ Although the ICA applied the correct standard of review, respectfully, the ICA's analysis regarding Petitioner's separation of powers challenge appears to be wrong. The

ICA relied on the fact that the legislature establishes the subject matter jurisdiction of the courts in reasoning there was no separation of powers issue. But, subject matter jurisdiction is not determinative of whether a legislative act that delegates judicial power [30] to an agency violates the separation of powers doctrine or not.

■ We recognize that "[t]he separation of powers doctrine is not expressly set forth in any single constitutional provision, but like the federal government, Hawaii's government is one in which the sovereign power is divided and allocated among three co-equal branches." *Hawaii Insurers Council v. Lingle*, 120 Hawai'i 51, 69, 201 P.3d 564, 582 (2008) (internal quotation marks and citation omitted). The separation of powers doctrine is intended "to preclude a commingling of essentially different powers of government in the same hands and thereby prevent a situation where one department would be controlled by, or subjected, directly or indirectly, to, the coercive influence of either of the other departments." *Pray v. Judicial Selection Comm'n of State*, 75 Haw. 333, 353, 861 P.2d 723, 732 (1993) (internal quotation marks and citation omitted).

■ Separation of powers concerns may arise when the legislature vests administrative agencies with judicial power but precludes judicial review of the determinations made by the agency in exercising such power. *State v. Bani*, 97 Hawai'i 285, 291 n. 4, 36 P.3d 1255, 1261 n. 4 (2001) is relevant. In

28. Respondent also argues that Petitioner did not raise the argument before the ICA that HRS chapter 103F violates the separation of powers doctrine by delegating judicial authority, and, thus, cannot raise it now. However, as related, Petitioner argued before the ICA that HRS chapter 103F "delegate[d] to an agency ... to determine with finality ... the meaning and application of the statute and administrative rules, and the legality and propriety of its own conduct." Inasmuch as Petitioner did raise the argument to the ICA, Respondent's assertion of waiver is wrong.

29. Additionally, Petitioner's reliance on *Peroutka* is misplaced. As Respondent contends, *Peroutka* quoted *Child Support Enforcement Agency v. Doe*, 109 Hawai'i 240, 246, 125 P.3d 461, 467 (2005), for the proposition that a statute is presumptively unconstitutional when it classifies persons on the

basis of suspect categories or impinges on fundamental rights. *Doe* involved an equal protection claim, and, in an equal protection challenge, the strict scrutiny standard applies to classifications based on suspect categories or that impinge on fundamental rights, while the rational basis test applies to laws that do not. Inasmuch as Petitioner raises no equal protection challenge, *Peroutka* is inapplicable.

30. It is said that "[t]he judicial power is an aspect of the power of a sovereign over a certain geographic territory; it derives from a generally recognized duty of the sovereign to regulate the relationship of individuals to the sovereign and the relationship of individuals *inter se*." *Alamida v. Wilson*, 53 Haw. 398, 400, 495 P.2d 585, 588 (1972). The Hawai'i Constitution vests judicial power in the courts pursuant to article VI section 1.

*Bani*, the defendant challenged the constitutionality of Hawaii's sex offender registration and notification statute after he was required to register as a sex offender. *Id.* at 286–87, 36 P.3d at 1256–57. This court noted that a section of the statute provided that " 'a sex offender shall have a diminished expectation of privacy in the [registration] information.' " *Id.* at 291 n. 4, 36 P.3d at 1261 n. 4.

It was declared by *Bani* that, although the legislature attempted to exempt the statute from the constitutional right to privacy, the framers of article I, section 6 of the Hawai'i Constitution[31] intended to entrust the definition of the right to privacy " 'to both the legislature and the courts.' " *Id.* According to *Bani*, this court has stated, " 'Our ultimate authority is the Constitution; and the courts, not the legislature, are the ultimate interpreters of the Constitution.' " *Id.* (quoting *State v. Nakata*, 76 Hawai'i 360, 370, 878 P.2d 699, 709 (1994)).

■ It was further observed that " 'the question as to the constitutionality of a statute is not for legislative determination, but is vested in the judiciary, and a statute cannot survive constitutional challenge based on legislative declaration alone.' " *Id.* (quoting *Del Rio v. Crake*, 87 Hawai'i 297, 304, 955 P.2d 90, 97 (1998)). Thus, according to *Bani*, "[t]o allow the legislature to exempt the statute from constitutional requirements, without independent review by this court and the judiciary, would effectively nullify article I, section 6." *Id.* In sum, *Bani* concluded that "the legislature's intent to preclude judicial review of [Hawai'i's sex offender registration and notification statute] violate[d] the doctrine of 'separation of powers[.]' " *Id.*

■ The United State Supreme Court has similarly held that if "Congress created a phalanx of non-Article III tribunals equipped to handle the entire business of the Article III courts without any Article III supervision or control and without evidence of valid and specific legislative necessities[,]" such a situation would violate the separation of powers doctrine. *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 855, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986). Additionally, it has been said that when delegations of quasi-judicial functions to an administrative agency allow for *"judicial review and full respect for due process* [,]" "the Constitution does not require that [federal courts] strike down statutes, otherwise having a reasonable legislative purpose, that invest administrative agencies with regulatory functions previously filled by judge and jury." *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 604–05 (Fed.Cir. 1985) (emphasis added); *see also Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 69 n. 23, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) ("[W]hen Congress assigns ... matters to administrative agencies, ... it has generally provided, and we have suggested that it may be required to provide, for ... judicial review.").[32]

---

31. Article I, section 6 of the Hawai'i Constitution provides that "[t]he right of the people to privacy is recognized and shall not be infringed without the showing of a compelling state interest. The legislature shall take affirmative steps to implement this right."

32. These cases are cited for general separation of powers propositions. The question of whether a claim involves private or public rights was not dispositive in these cases. Under federal law, public rights encompass "matters arising between the Government and persons subject to its authority in connection with the performance of constitutional functions of the executive or legislative departments." *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 585, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985) (citation omitted). Private rights generally involve "the liability of one individual to another under the law as defined." *Id.* (internal quotation marks and citation omitted).

The Court has "rejected any attempt to make determinative for [purposes of determining whether Congress can withdraw certain cases from Article III courts] the distinction between public rights and private rights[.]" *Id.* at 853–84, 105 S.Ct. 3325. The "theory that the public rights/private rights dichotomy ... provides a bright-line test for determining the requirements of Article III" has not commanded a majority of the Court. *Id.* at 585–586, 105 S.Ct. 3325. *See also Commodity Futures*, 478 U.S. at 853, 106 S.Ct. 3245 ("[T]his Court has rejected any attempt to make determinative for Article III purposes the distinction between public rights and private rights....") (internal citation omitted). In any event, strictures imposed by the United States Supreme Court with respect to Article III courts as opposed to non-Article III tribunals and the case law thereunder are not binding on Hawai'i courts with respect to judicial review under the Hawai'i constitution.

Along the same lines, some state courts have held that, although the legislature may delegate judicial power to a legislative agency, it may not preclude final judicial review of the agency's decisions. *See e.g., Asbury v. Lombardi*, 846 S.W.2d 196, 200 (Mo.1993) ("[W]hile the legislature may allow for judicial or quasi-judicial decision-making by legislative or executive (administrative) agencies, it may not preclude judicial review of those decisions[;] [n]or may the legislature alter the principal power of the judiciary to make the final review."). *McHugh v. Santa Monica Rent Control Bd.*, 49 Cal.3d 348, 261 Cal.Rptr. 318, 777 P.2d 91, 102 (1989), cogently explains the separation of powers doctrine when an administrative agency is given judicial power:

> Our constitutional provision confining "judicial powers" to the courts ... has counterparts in most other state constitutions, as well as the federal Constitution.... Modern courts, however, have not rigidly construed these provisions. Instead, a more tolerant approach to the delegation of judicial powers has emerged out of a perceived necessity to accommodate administrative adjudication of certain disputes and thereby to cope with increasing demands on our traditional judicial system.
>
> *The accommodating view of modern courts, however, generally has been conditioned by two limiting principles, one procedural and the other substantive.* First, our sister state cases, like our own universally recognize the constitutional necessity of the "principle of check." *They hold the availability of judicial review of administrative decisions is sufficient to satisfy the "principle of check."*
>
> The substantive limitation is[, ... w]hen an executive board has regulatory func-

tions, it may hear and determine controversies which are incidental thereto, but if the duty is primarily to decide questions of legal right between private parties, the function belongs to the judiciary.... The creation of an executive board is justified if its service is to determine and maintain a public right or interest. To accomplish its purposes judicial powers may be necessarily exerted. But they must concern matters of an executive character. They are proper if it may fairly be said that there is need of them in order to produce an efficient and effective administrative enforcement of the public interest.

(Citations and footnotes omitted.) (Emphases added).

■ It would appear from the foregoing that separation of powers concerns may be implicated where the legislature vests an administrative agency with adjudicatory power and precludes judicial review of the determinations made by the agency in that capacity.[33] Without judicial review, there would be no "check" on the propriety of the agency's actions under the law and the agency could be left to decide the legality of its own actions. *See id.*, 261 Cal.Rptr. 318, 777 P.2d at 107 (stating that "the 'principle of check' " is respected "by providing for judicial review of administrative determinations"). Thus, if the legislature delegates judicial power to an administrative agency and precludes judicial review of the legality of the agency's own actions, a separation of powers issue would arise.

### D.

■ The ICA and Respondent did not view the issue in such a manner. According to the ICA and Respondent, because the legislature has the power to establish the

---

**33.** While "[t]he interpretation of the meaning of statutes, as applied to justiciable controversies, is exclusively a judicial function[,]" *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 544, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940), " '[t]he power to hear and determine, or to ascertain facts decided by the application of rules of law to the ascertained facts, is undoubtedly a part of the judicial power or a judicial function[,]' " but it is not an exclusive judicial function, *Great Lakes Transfer, LLC v. Porter County Highway Dept.*, 952 N.E.2d

235, 242 (Ind.App.2011) (quoting 1 Am. Jr. Administrative Law § 168). As noted,

> "Administrative agencies may hear and determine, or ascertain facts and decide by the application of rules of law to the ascertained facts, and even determine the facts upon which their jurisdiction depends, and the power exercised by them is not judicial in the sense of a violation of the principle of separation of powers, but is administrative or quasi-judicial." *Id.*

subject matter jurisdiction of the courts and to create or deny appellate review, the alleged prohibition against judicial review of protest decisions under HRS chapter 103F *per se* cannot present a separation of powers issue. *See Hamamoto*, 125 Hawaiʻi at 207, 257 P.3d at 220; *see also* Response at 7 ("Since the Hawaiʻi Constitution authorizes the [l]egislature to determine the jurisdiction of the courts, it cannot, as a matter of logic, pose a separation of powers problem for the [l]egislature to exercise this power."). Contrary to the ICA's and Respondent's positions, subject matter jurisdiction cannot be relied upon to determine whether, in granting an administrative agency judicial power without allowing for judicial review, the legislature violated the separation of powers doctrine.[34]

 It is well established that the legislature has the power to set the subject matter jurisdiction of the courts.[35] However, the ICA appears to have erred in deciding that, because the legislature delineates the subject matter jurisdiction, the legislature could automatically preclude judicial review of the protest decision, without implicating the separation of powers doctrine. *Hamamoto*, 125 Hawaiʻi at 206, 257 P.3d at 219. Under the ICA's approach, the legislature could give administrative agencies judicial power, and prohibit any judicial review of administrative decisions, all in an appropriate exercise of its power to set subject matter jurisdiction.

### V.

 In order to determine whether there is a separation of powers violation, it must be decided whether the legislature delegated a judicial function to an administrative agency; here, the DOE in its capacity as a procurement agency. It would seem that, to the extent HRS chapter 103F delegates to the DOE authority to interpret and to apply HRS chapter 103F and rules promulgated thereunder in deciding disputes raised by protesting parties, the legislature vested the DOE with judicial power.[36] For just as this court is the ultimate interpreter of our constitution, *Bani*, 97 Hawaiʻi at 291 n. 4, 36 P.3d at 1261 n. 4, this court is the final arbiter of our statutory law, *see Rana v. Bishop Ins. of Hawaii, Inc.*, 6 Haw.App. 1, 10, 713 P.2d 1363, 1369 (1985) ("The state courts are the final arbiters of the State's own law.") (Brackets, quotation marks, and citation omitted.). Moreover, "[t]he quintessential power of the judiciary is the power to

---

34. As noted *supra*, "the question as to the constitutionality of a statute is not for legislative determination, but is vested in the judiciary, and a statute cannot survive constitutional challenge based on legislative declaration alone." *Del Rio*, 87 Hawaiʻi at 304, 955 P.2d at 97. Accordingly, a legislative "declaration" in a statute allegedly providing that a court lacks judicial review of an agency decision is not immune from a challenge that the "declaration" is itself unconstitutional because it vests judicial power in an administrative agency and does not provide for judicial review. *Id.*

35. Even if the legislature attempted to preclude judicial review of an agency's decisions, it has been said "that even where the intent of Congress was to preclude judicial review, a limited jurisdiction exists in the court to review actions which on their face are plainly in excess of statutory authority." *Briscoe v. Bell*, 432 U.S. 404, 408, 97 S.Ct. 2428, 53 L.Ed.2d 439 (1977) (internal quotation marks and citation omitted). As discussed *infra*, Petitioners argue that Respondent failed to follow the procedures delineated under HRS chapter 103F and thus raise the argument that Respondent acted beyond its statutory authority.

36. There is no doubt the DOE, as the purchasing agency, exercises judicial power. To reiterate, HRS § 103F–501 (Supp.2005) allows the purchasing agency to decide a "protest" brought by a person aggrieved by an award of a contract because of "a purchasing agency's [alleged] failure to follow procedures established by [HRS chapter 103F], rules adopted by the policy board, or a request for proposals in selecting a provider and awarding a purchase of health and human services contract[.]" HRS 103F–501(a). Pursuant to HRS § 103F–501(c), the protest must be submitted to the purchasing agency which "may settle and resolve the protest by" the means set forth thereunder.

Again, if the protest is not resolved by mutual agreement, the head of the purchasing agency must promptly "issue a decision in writing[,]" which becomes "final and conclusive" "unless a request for reconsideration is submitted to the chief procurement officer[.]" HRS § 103F–501(d) & (e). "A request for reconsideration may be made only to correct a purchasing agency's failure to comply with section 103F–402 or 103F–403, rules adopted to implement the sections, or a request for proposal, if applicable." HRS 103F–502.

make *final* determinations of questions of law" and "[t]his power is nondelegable power resting exclusively with the judiciary." *Asbury*, 846 S.W.2d at 200 (citing *Marbury*, 5 U.S. 137 (other citations omitted)) (emphasis added). Insofar as the purchasing agency is charged with determining whether it failed to "follow procedures established by [HRS § 103F–501,]" HRS § 103F–501(a) and must decide whether the purchasing agency itself violated the law, i.e. "fail[ed] to comply with section 103F–402 or 103F–403, rules[ ], or a[RFP]," HRS 103F–502, the agency makes ". . . determinations of questions of law." *Id.*

## VI.

### A.

■ Having decided that the DOE has been vested with judicial power insofar as it interprets and applies the provisions of HRS chapter 103F in protestors' disputes, it must be decided whether HRS chapter 103F precludes judicial review of the agency's decisions regarding its *own* actions in such disputes.

■ This court has said that "there is a policy favoring judicial review of administrative actions." *In re Matter of Hawaii Gov't Emps.' Ass'n, Local 152, AFSCME, AFL–CIO*, 63 Haw. 85, 87, 621 P.2d 361, 363 (1980) (*HGEA*); *accord Ariyoshi v. Haw. Pub. Emp't Relations Bd.*, 5 Haw.App. 533, 538, 704 P.2d 917, 923 (1985). In that regard, a civil complaint, such as the one filed by Petitioner, ostensibly falls within the prescribed jurisdiction of our courts. In *Sherman*, 63 Haw. at 58, 621 P.2d at 349, this court explained that the legislature established subject matter jurisdiction of the courts in enacting HRS § 603–21.5 and HRS § 633–27. HRS § 603–21.5 (Supp.2005) provides in pertinent part that the several circuit courts shall have jurisdiction, "except as otherwise expressly provided by statute," of "[c]ivil actions and proceedings[.]"

According to *Sherman*, "the circuit court has jurisdiction over all civil causes of action

unless precluded by the State Constitution or by statute." 63 Haw. at 58, 621 P.2d at 349. Thus, the courts have subject matter jurisdiction over "civil actions and proceedings[,]" and it is presumed that the courts have jurisdiction, unless the legislature "expressly" provides otherwise by statute. HRS § 603–21.5.[37]

### B.

Consequently, the question is whether HRS chapter 103F divests circuit courts of jurisdiction over appeals from an agency decision. As indicated, HRS §§ 103F–501 and 103F–502 set forth the steps for a party to protest a contract award. The party submits a letter of protest to the head of the purchasing agency. To reiterate, if the protest is denied, the party then has the option of submitting a request for reconsideration to the chief procurement officer, who can either confirm the previous decision or reopen the protest. If a party does not file a request for reconsideration, the decision of the head of the head of the purchasing agency is "final and conclusive." HRS § 103F–501(e). If, however, a party does file a request for reconsideration, the chief procurement officer may uphold the decision of the head of the purchasing agency or reopen the protest. HRS § 103F–502(c). The decision of the chief procurement officer under HRS § 103F–502(c) is to be "final and conclusive." HRS § 103F–502(d).

Preliminarily, it may be noted that the "final and conclusive" language in HRS § 103F–502(d) would not appear to decisively absolve the purchasing agency's decision under HRS chapter 103F from judicial review. *See Schneider v. United States*, 27 F.3d 1327, 1331 (8th Cir.1994) (noting that where the statute states that the agency decision is "final," it only prevents further administrative review) (citing *Shaughnessy v. Pedreiro*, 349 U.S. 48, 51–52, 75 S.Ct. 591, 99 L.Ed. 868 (1955)); *see also Lindahl v. Office of Personnel Mgmt.*, 470 U.S. 768, 778–79, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985) (holding that the

---

**37.** HRS § 661–1 (1993) gives the circuit courts and district courts, "except as otherwise provided by statute or rule," original jurisdiction to determine "[a]ll claims against the State founded upon any statute of the State[.]" This statute was not raised by the parties, and we need not reach its applicability, if any, in these circumstances.

phrase "final and conclusive" did not preclude judicial review altogether); *Meaney v. Sacramento Hous. & Redevelopment Agency*, 13 Cal.App.4th 566, 578–79, 16 Cal. Rptr.2d 589 (Cal.Ct.App.1993) (concluding that "final and conclusive" did not "preclude judicial review of the procedures followed by the agency and the local legislative body in making the determinations or of the question whether the determinations comply with [the statute]").

 Based on the foregoing authorities, the phrase "final and conclusive," HRS § 103F–502(d), is insufficient to evince legislative intent to preclude judicial review of the purchasing agency's decision altogether. *See Lindahl*, 470 U.S. at 771, 779–80, 105 S.Ct. 1620 (stating that "Congress typically employs language far more unambiguous and comprehensive" than "final and conclusive and [ ] not subject to review" when it "intends to bar judicial review altogether[.]"); *see also Heikkila v. Barber*, 345 U.S. 229, 233, 73 S.Ct. 603, 97 L.Ed. 972 (1953) (noting that the term "final" is ambiguous inasmuch as "it might refer to the doctrine requiring exhaustion of administrative remedies before judicial process can be invoked").[38] It would appear from the foregoing cases that courts generally require express language in addition to the words "final and conclusive" to conclude that the legislature intended to preclude judicial review of an agency's decisions. Therefore, under the views expressed *supra*, the "final and conclusive" language in HRS § 103F–502(c) would not preclude judicial review. Accordingly, nothing in HRS § 103F–502(c) expressly excludes judicial review.

### C.

Here, no dispute arose as to whether Petitioner's request for reconsideration was timely. Because Petitioner's request for reconsideration was denied by the DOE, Respondent maintains HRS § 103F–504 declares that "[t]he procedures and remedies ..., and the rules adopted by the policy board, shall be the exclusive means available for persons aggrieved ... to resolve their concerns" governs.

However, this language, on its face, does not definitively settle the question of whether judicial review is precluded. (Emphasis added.) The statute suggests that the administrative procedure is the exclusive method to "resolve [the parties'] ... concerns," *id.*, relating to a contract award, but it does not expressly exclude judicial review. The term "concerns" is defined as, *inter alia*, "a care or trouble"; "marked interest or regard"; "an uneasy state of blended interest, uncertainty, and apprehension"; or "matter for consideration[.]" *Merriam Webster's Collegiate Dictionary* 238 (10th ed. 1989). Thus, the term "concerns" is general and undifferentiating. It lacks the singular focus that would attach to the gravity of excluding judicial review. The exclusivity of remedy provision, then, would not compel the conclusion that judicial review was abrogated.

Moreover, legislative history supports this view. *See State v. Entrekin*, 98 Hawai'i 221, 227, 47 P.3d 336, 342 (2002) ("Legislative history may be consulted to confirm an interpretation of a statute.") HRS chapter 103F was enacted in 1997 to create a procedure for the purchasing of health and human services (chapter 103F), and a procedure governing the awards of grants and subsidies (chapter 42F). According to the legislature, this "simpler, standardized process" would ensure the *"fair and equitable treatment of all persons who apply to, and are paid to provide those services on the agencies' behalf"* and "optimize information-sharing, planning, and service delivery efforts." 1997 Haw. Sess. Laws Act 190, § 1 at 351 (emphasis added). Additionally, the purpose of the bill enacting HRS

---

38. Under federal law, there is a "strong presumption" that Congress intends there to be judicial review of administrative agency action, *see Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986), and the government bears a "heavy burden" when arguing that Congress meant to prohibit all judicial review, *see Dunlop v. Bachowski*, 421 U.S. 560, 567, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975). Indeed, "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the [federal] courts restrict access to judicial review." *Abbott Labs. v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) *overruled on other grounds, Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

chapter 103F "provid[ed] for a single source of public procurement policy that will *promote greater fairness, efficiency, effectiveness, and accountability.*" Stand. Comm. Report No. 940, in 1997 House Journal, at 1461 (emphases added); *see* Stand. Comm. Report No. 1196, in 1997 Senate Journal, at 1348 (noting that the purpose of the bill is to improve the process for expending funds for grants, subsidies, and purchases of services by providing a process to be used for grants and subsidies for public purposes, and a separate process for purchase of health and human services).

The foregoing legislative expressions indicate that proceedings were established to streamline the awarding of health and human services contracts. But, nothing in the legislative history expressly states that the legislature intended the chief procurement officer's protest decision be shielded from judicial review. Rather, on its face, the legislative intent that "all persons who apply to ... provide [health] and human services" be afforded "fair and equitable treatment" would countenance against an intent to vest the purchasing agency with final, unreviewable decision making power in its own disputes, with a person who applied to provide

services. Such a process would not be perceived as fair or as equitable. Empowering one party to the dispute to decide the outcome without recourse by the other party would taint the protest procedure as partial and inequitable. This would also undermine the legislature's intent to foster "accountability," of the agency. Accordingly, Respondent's argument, that the legislative history constitutes "clear and convincing evidence" that judicial review is precluded, is unpersuasive, and judicial review would not be prohibited by the text of HRS §§ 103F–501 and 103F–504.[39]

### D.

■ Significantly, judicial review of an administrative decision may be available even in the face of language that unambiguously precludes judicial review. For example, the Court of Appeals of New York concluded that a statute providing that an agency's decision "shall be final and conclusive, and not subject to further review in any court" precluded review of "the merits of the determination of the [agency]." *New York City Dep't. of Envtl. Prot. v. New York City Civil Serv. Comm'n*, 78 N.Y.2d 318, 574 N.Y.S.2d 664, 579 N.E.2d 1385, 1386 (1991). That

---

**39.** At oral argument, it was noted that there is nothing in the legislative history to indicate the legislature intended to prevent judicial review under chapter 103F. Respondent responded that "in 1996 ... the legislature ... request[ed] the state procurement office to prepare a report.... The procurement office responded with a detailed report filed in 1996.... Among [the] ... recommendations was the state procurement office's recommendation that there not be any judicial review.... In 1997, the legislature followed that recommendation and enacted what is now chapter 103F." MP3: Oral Argument, Hawai'i Supreme Court, at 35:59–37:27, *available at* http://www.courts.state.hi.us/courts/oral_arguments/archive/oasc29742.html.

However, the report referred to by Respondent at oral argument was not made a part of the record in this case. In addition, the legislature did reference the "recommendations by State Procurement Office" as follows, but precluding judicial review is not among them:

 (1) Deleting the definitions of "grants" and "subsidies" from the new chapter on Purchases of Health and Human Services;

 (2) Amending the definition of "health and human services" to mean services intended to maintain or improve health or social well-being;

 (3) Expanding the duties of the Chief Procurement Officer to provide a statewide orientation and training program for all parties on all matters relating to carrying out the purposes of this chapter;

 (4) Limiting the basis for reconsideration of the head of a purchasing agency's decision on a protest to non-compliance with statute or rule;

 (5) Requiring each recipient or provider of services to indemnify and hold the State harmless; and

 (6) Making technical, nonsubstantive amendments for purposes of style and clarity.

Stand. Comm. Report No. 940, in 1997 House Journal, at 1461. Hence, significantly absent from the legislature's reference to the state procurement office report is any recommendation to abolish judicial review. As noted, HRS § 103F does not expressly preclude judicial review. In addition to the other reasons set forth *supra*, we decline to conclude, as Respondent suggests, that the legislature enacted HRS chapter 103F with an intent to preclude judicial review when there is nothing in the statute or its legislative history expressly evincing such an intent.

court explained that "the Legislature is permitted to restrict the availability of judicial review" but that there must be "clear and convincing evidence" of such intent. *Id.*, 574 N.Y.S.2d 664, 579 N.E.2d at 1387. *New York City Department* concluded that the language of the statute and legislative history evidenced the legislature's intent to preclude judicial review of the agency's decision. *Id.*

However, the *New York City Department* court stated that the inquiry did not end there. *Id.* That court held that judicial review is required even in the face of such legislative intent to preclude judicial review in two instances. "First, if a constitutional right is implicated, some sort of judicial review must be afforded the aggrieved party." [40] *Id.*, 574 N.Y.S.2d 664, 579 N.E.2d at 1387. "Second, judicial review is mandated when the agency has acted illegally, unconstitutionally, or in excess of its jurisdiction." *Id.* For example, "a court should step in if an agency acts in violation of the [c]onstitution, *statutes or its own regulations.*" *Id.*, 574 N.Y.S.2d 664, 579 N.E.2d at 1388 (emphasis added). This statement would apply to Petitioner's claims in the instant case alleging Respondent acted outside of its statutory authority. Thus, assuming, *arguendo,* HRS chapter 103F did include language expressly precluding judicial review of the agency's decision, or that could be deemed as such, it should not bar review of whether the DOE violated the Constitution, statutes, or its own regulations in awarding the contract, as alleged by Petitioner. *Id.* Thus, judicial review would not be precluded in this instance.

### E.

Furthermore, to conclude that HRS chapter 103F abrogates judicial review of whether the purchasing agency interpreted the law correctly or complied with the law in the instant circumstances may render the statute violative of the separation of powers doctrine. As related before, where the legislature delegates judicial power to an administrative agency, there is a "necessity of the 'principle of check.'" *Monica Rent Control Bd.*, 261 Cal.Rptr. 318, 777 P.2d at 102. The "availability of judicial review of administrative decisions is sufficient to satisfy the 'principle of check.'" *Id.* This is persuasive inasmuch as it would seem fundamentally unfair and inequitable, *see* 1997 Haw. Sess. Laws Act 190, § 1 at 351 (stating that HRS chapter 103F was intended to facilitate "fair and equitable treatment of all persons who apply to," provide services), and contrary to "full respect for due process," *Commodity Futures Trading Comm'n,* 478 U.S. at 855, 106 S.Ct. 3245, for an agency to determine the propriety of its own actions in a legal dispute with an adverse party. [41] Because the statute as construed does not exclude judicial review, it would not implicate the separation of powers doctrine, and, thus, HRS chapter 103F would not violate that doctrine, as Petitioner suggests.

### VII.

The availability of judicial review in this case is also supported by constitutional imperative. Hawaiʻi's multi-tiered court sys-

---

40. Similarly, in *Johnson v. Robison,* 415 U.S. 361, 367, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), the Supreme Court's holding that the language "shall be final and conclusive and no . . . court of the United States shall have power or jurisdiction to review any such decision[,]" "appear[ed] to be aimed at review only of those decisions of law or fact that arise in the administration by the Veterans' Administration of a statute providing benefits for veterans." *Johnson* concluded that such language did "not extend the prohibitions of that section to actions challenging the constitutionality of laws providing benefits for veterans." *Id.* at 374, 94 S.Ct. 1160.

41. Respondent relies on *Sifagaloa v. Bd. of Trustees,* 74 Haw. 181, 188–92, 840 P.2d 367, 371–72 (1992) for the proposition that an agency may

determine the propriety of its own actions. In *Sifagaloa* this court determined that the fact trustees of the employment retirement fund (ERS) have purportedly conflicting obligations of awarding retirement benefits and preserving the financial integrity of the ERS fund did not disqualify the trustees from making decisions with respect to awarding benefits. However, in *Sifagaloa,* the trustees' decision with respect to the award of retirement benefits was subject to judicial review. *Id.* at 185–86, 840 P.2d at 369–70. Unlike in *Sifagaloa,* Petitioners do not assert the agency may not preliminarily determine the propriety of its own actions, but rather, that it would violate separate of powers to preclude judicial review of the agency's decision. Thus, *Sifagaloa* is inapposite.

tem is a product of the Hawai'i Constitution. Importantly, unlike in the federal court system, the Hawai'i Constitution does not leave it to the legislative body to establish courts other than the supreme court.[42] Rather, the mandate for a judiciary consisting of trial and appellate courts proceeds from the constitution itself. The Constitution states in pertinent part, that "[t]he judicial power of the State shall be vested in one supreme court, one intermediate appellate court, circuit courts, [and] district courts...." Haw. Const. art. VI, § 1 (1978).[43] The Constitution also establishes the number of justices that may serve on the supreme court, provides for the appointment and removal of justices and judges, and delegates the administration of the courts to the chief justice of the supreme court. *See id.* In *State v. Moriwake*, 65 Haw. 47, 647 P.2d 705 (1982), this court explained that, although the exact nature of the "judicial power" is not defined in the constitution, the " 'inherent power of the court is the power to protect itself; the power to administer justice whether any previous form of remedy has been granted or not; the power to promulgate rules for its practice; and the power to provide process where none exists.' " *Id.* at 56, 647 P.2d at 712 (1982) (quoting *In re Bruen,* 102 Wash. 472, 172 P. 1152, 1153 (1918)).

 Thus, the existence, structure, and composition of our judiciary is established by the Hawai'i Constitution and cannot be altered by the legislature. This indicates that the power to administer justice and adjudicate disputes that is conferred upon the courts is presumed and will be available to the people of the state. The constitutional power to administer justice, *see id.,* is implicated in this case. Inherent in that power is, by corollary, that parties should have appropriate access to the courts of this state in resolving disputes.

## VIII.

### A.

 Inasmuch as judicial review is not prohibited, the issue becomes what type of judicial review is allowed.[44] HRS chapter 103D, which regulates government procurement contracts, except for health and human services contracts covered by chapter 103F, expressly provides that a party aggrieved by a final decision of a hearings officer may apply for judicial review of the agency's decision through the procedures of HRS chapter 91, cf. n.18, *supra.* HRS § 103D–710 (Supp. 2010).

Unlike HRS chapter 103D, HRS chapter 103F does not delineate the nature of judicial review available. It may be argued that the fact that HRS chapter 103D expressly provides for judicial review while HRS chapter 103F does not, suggests that the legislature intended to preclude judicial review under HRS chapter 103F. However, as stated before, there is a policy favoring judicial review of administrative agencies, *see HGEA,* 63 Haw. at 87, 621 P.2d at 363, and the courts of this state have jurisdiction over all civil actions unless "expressly provided by statute," HRS § 603–21.5. To reiterate, HRS § 103F–502(c) and HRS § 103F–504 do not expressly preclude judicial review. In addition, the general and broad phrase "resolve their concerns" in the exclusivity of remedies provision, HRS § 103F–504, does not convey the singular intent to bar judicial review. The legislative intent to fairly and equitably treat persons who apply to provide services under HRS chapter 103F and to ensure accountability of the purchasing agency countenance against construing the statute as vesting the agency with sole and unreviewable authority to determine the propriety of its own actions in a dispute with a protesting party. Furthermore, as discussed *supra,* to construe the

---

42. Consequently, Hawai'i courts are not limited by the dichotomy between "article III [of the United States Constitution] courts" and non-article III courts, or decisions in respect thereof, that characterizes the federal court system.

43. Article IV, section 1 goes on to authorize "such other courts" as the legislature may from time to time establish.

44. It is plain that HRS § 91–14 would not provide a right to appeal the agency decision. *See Alaka'i I,* 2007 WL 158980, at *1 (determining that the protest under HRS chapter 103F was not an agency hearing, and, thus, Petitioner could not appeal from that decision under HRS § 91–14).

statute as precluding judicial review would raise serious questions regarding the doctrine of separation of powers and the potential contravention of the judicial power vested in the courts by article VI, section 1 of the Hawai'i Constitution. In light of the foregoing, it cannot be concluded that judicial review is prohibited.

It would appear such review would be available, through a declaratory judgment action brought pursuant to HRS § 632-1. A declaratory judgment action is a necessary remedy under the circumstances of this case. Thus, after the procurement decision is "final" and not subject to further review by the administrative officer, the protesting party should be able to maintain a declaratory judgment action in the circuit court to contest the decision.

## B.

HRS § 632-1 provides that declaratory judgment relief may be granted "where the court is satisfied that antagonistic claims are present between the parties involved[.]" [45] In the instant case, Petitioner timely brought a declaratory judgment action against Hamamoto,[46] in her official capacity as Superintendent of Education, because there were "antagonistic claims" between Petitioner and the DOE concerning the awarding of contracts.

HRS § 632-1 additionally provides that, "[w]here, however, a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed[.]" HRS chapter 103F does contain a

procedure for resolving the concerns of a party. As discussed, however, the procedure for resolving general "concerns" in HRS § 103F-504 is not a special form of remedy that substitutes for judicial review. See discussion supra. In sum, judicial review of HRS chapter 103F should be available in this case by way of declaratory action pursuant to HRS § 632-1.[47]

## IX.

The ICA relied on Travelers Ins. Co. v. Hawaii Roofing, Inc., 64 Haw. 380, 385, 641 P.2d 1333, 1337 (1982), in concluding that declaratory relief was unavailable because HRS chapter 103F provides a specific statutory remedy that must be followed. Hamamoto, 125 Hawai'i at 207, 257 P.3d at 220. But, Travelers Ins. is distinguishable. In Travelers Ins., a dispute arose over which of two insurance carriers was responsible for payments to a workers' compensation claimant. 64 Haw. at 381, 641 P.2d at 1334-35. In proceedings before the Disability Compensation Division, it was determined that Travelers Insurance Company (Travelers) was the responsible carrier. Id. at 382, 641 P.2d at 1335.

Travelers appealed to the Labor and Industrial Relations Appeals Board (the Appeals Board) but at the same time, sought relief in the circuit court by way of declaratory action. Id. at 382-83, 641 P.2d at 1335. The other insurance carrier (HIG) moved to dismiss the declaratory action for want of jurisdiction. Id. That motion was denied,

---

**45.** HRS § 91-14(a) provides an avenue for judicial review in a "contested case[.]" As noted, this court previously held that this is not a contested case. See Alaka'i I, 2007 WL 158980, at *1-2. Hence, HRS § 91-14 is inapplicable. In any event, HRS § 91-14 does not "prevent resort to other means of review, redress, [or] relief[,]" such as pursuant to HRS § 632-1.

**46.** Thus, we are not faced with a question of timeliness with respect to the filing of the instant declaratory action. Parties have an incentive to seek judicial review expeditiously inasmuch as delay may render any challenge to an agency's award of a contract moot. The effect of any delay should be decided by the circuit court based on the facts and circumstances of each particular case.

**47.** HRS § 632-1 also provides that "the mere fact that an actual or threatened controversy is susceptible of relief through a general common law remedy, a remedy equitable in nature, *or an extraordinary legal remedy, whether such remedy is recognized or regulated by statute or not,* shall not debar a party from the privilege of obtaining a declaratory judgment in any case where the other essentials to such relief are present." That language suggests that declaratory relief may be available even when other forms of relief exist. HRS § 632-1 (emphasis added). This is consistent with legislative intent, inasmuch as the legislature amended the act in 1945 to "afford greater relief" by declaratory judgment. Dejetley v. Kaho'ohalahala, 122 Hawai'i 251, 268, 226 P.3d 421, 438 (2010) (quoting H. Stand. Com. Rep. No. 76, in 1945 House Journal, at 566).

summary judgment was granted in Travelers' favor, and HIG appealed to this court. *Id.* at 383, 641 P.2d at 1335–36. This court determined that declaratory relief was not available because the law already provides for judicial review in workers' compensation cases, by way of HRS § 386–73.

Pursuant to HRS § 386–73 (Supp.2007),[48] " 'the director of labor and industrial relations [ (director) ] shall have original jurisdiction over all controversies and disputes arising under th[at] chapter.' " *Id.* at 383, 641 P.2d at 1336. The statute additionally provided that " '[t]here shall be a right of appeal from the decisions of the director to the appellate board and thence to the supreme court[.]' " [49] *Id.* Because HRS § 386–73 already provided for an appeal to the supreme court, Travelers should have followed this course rather than also filing a declaratory action under HRS § 632–1.

Unlike in the instant case, the workers' compensation scheme in *Travelers* sets out an express and specific procedure by which a party may obtain judicial review. HRS § 386–73. This court would not allow the party in *Travelers Ins.* to circumvent that procedure by attempting to obtain judicial review through the use of HRS § 632–1. Here, HRS chapter 103F, as construed, does not expressly prescribe a form of judicial review. Hence, *Travelers Ins.* does not prohibit declaratory relief in the instant case. *Travelers Ins.*, then, is not controlling.

### X.

▮▮▮▮ Next, it must be considered whether Petitioner may sue to enforce HRS chapter 103F under the declaratory judgment statute. In order for a party to sue for enforcement under HRS § 632–1, HRS chapter 103F must provide for an express or implied private right of action. *County of Hawaii v. Ala Loop Homeowners*, 123 Hawai'i 391, 407 n. 20, 235 P.3d 1103, 1119 n. 20 (2010) ("The private right of action inquiry focuses on the question of whether any private party can sue to enforce a statute, while the standing inquiry focuses on whether a particular private party is an appropriate plaintiff.") This court applies "three factors in determining whether a statute provides a private right of action[,]" with the "understanding that legislative intent appears to be the determinative factor." *Whitey's Boat Cruises, Inc. v. Napali–Kauai Boat Charters, Inc.*, 110 Hawai'i 302, 313, 132 P.3d 1213, 1224 (2006). This court considers, first, whether " 'the plaintiff [is] one of the class for whose especial benefit the statute was enacted; ... that is, does the statute create a ... right in favor of the plaintiff.' " *Id.* at 312, 132 P.3d at 1223 (quoting *Reliable Collection Agency, Ltd. v. Cole*, 59 Haw. 503, 507, 584 P.2d 107, 109 (1978)) (brackets omitted). Second, this court considers whether there is " 'any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one.' " *Id.* (quoting *Reliable Collection Agency*, 59 Haw. at 507, 584 P.2d at 109). Third, whether " 'it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff[.]' " *Id.* (quoting *Reliable Collection Agency*, 59 Haw. at 507, 584 P.2d at 109).

Here, Petitioner's claims are premised on the allegation that there should be judicial review to ascertain whether the agency correctly followed the law and regulations in awarding contracts. HRS chapter 103F does create a right "in favor" of Petitioner, inasmuch as it entitles Petitioner to a contract award process that is in compliance with and not in excess of HRS chapter 103F and appli-

---

**48.** HRS § 386–73 provides as follows:

Unless otherwise provided, the director of labor and industrial relations shall have original jurisdiction over all controversies and disputes arising under this chapter. The decisions of the director shall be enforceable by the circuit court as provided in section 386–91. *There shall be a right of appeal from the decisions of the director to the appellate board and thence to the intermediate appellate court, subject to chapter 602, as provided in sections 386–87 and 386–88,* but in no case shall an appeal operate as a supersedeas or stay unless the appellate board or the appellate court so orders.

**49.** At the time *Travelers* was decided, HRS § 386–73 provided for appeals to the appellate board and "thence to the supreme court[,]" but not to the intermediate appellate court. HRS § 386–73 now provides for appeals "to the appellate board and thence to the intermediate appellate court."

cable regulations. In other words, HRS chapter 103F, by establishing the process in which a protester can challenge whether the award abided by statutes, regulations, or the RFP, creates a right of the protestor to have the process comply with statutes, regulations, and the RFP.

As to legislative intent, the legislature expressed the intent that the process in HRS chapter 103F "ensure the fair and equitable treatment of all persons who apply to . . . provide . . . services on the agencies' behalf[,]" and "to promote . . . fairness and accountability." 1997 Haw. Sess. Laws Act 190, § 1 at 351. Again, it would be fundamentally unfair and inequitable and counterproductive of promoting accountability to vest the purchasing agency with final unreviewable power to determine whether the agency itself complied with the law, in a dispute with one of the protesting parties. *See HOH*, 69 Haw. at 143, 736 P.2d at 1276 (stating that the administrative agency is not "qualified to adjudicate the propriety of its own action").[50] Thus, there is "indication of legislative intent, implicit[ly], . . . to create [ ] a remedy" for the purchasing agency's failure to comply with HRS chapter 103F and, correlatively, nothing expressly indicat[es] an intent to "deny one." *Whitey's Boat Cruises*, 110 Hawai'i at 313, 132 P.3d at 1224 (2006) (internal quotation marks and citation omitted). Based on the foregoing, there is a private right of action allowed against the State (i.e., the DOE) specifically challenging a decision made under HRS chapter 103F, as to whether the relevant administrative officers complied with the statutes, rules, and the RFP.

## XI.

Regarding its second question, Petitioner asserts that the ICA erred in determining that Petitioner could not maintain a negligence claim with respect to Respondent's decision under chapter 103F. According to Petitioner, the ICA erred inasmuch as (1) the STLA, HRS Chapter 662, provides that the State[51] can be liable in tort where its employees fail to exercise due care " 'in the execution of a statute or regulation, whether or not such statute or regulation is valid[,]' " (citing *Tseu v. Jeyte*, 88 Hawai'i 85, 87, 962 P.2d 344, 347 (1998)), and (2) although the ICA dismissed its tort claim for lack of a private right of action, the STLA, in and of itself, creates a private right of action. Respondent counters that the STLA is a "waiver statute, not a statute establishing private causes of action," and that the ICA properly concluded that because chapter 103F does not create a private right of action, Petitioner could not sue under the STLA.[52]

"The [STLA], enacted in 1957, is a specific waiver of tort immunity." *Figueroa v. State*, 61 Haw. 369, 383, 604 P.2d 1198, 1206 (1979). The State waives immunity for liability "in the same manner and to the same extent as a private individual under like circumstances[.]" HRS § 662–2 (1993). But, "[t]he State[ ] . . . remains immune from liability based upon governmental functions for which no private analog exists and waives its immunity only to the extent a plaintiff's claim for relief is comparable to a recognized claim for relief against a private person." *Kaho'ohanohano*, 117 Hawai'i at 282, 178 P.3d at 558. This proposition is dispositive of the second question.[53]

50. Respondent argues that in *HOH*, this court considered whether an agency may determine whether its actions were proper under the constitution. Since the courts of this state are the final arbiters of statutes and of rules having the force of law as well as our constitution, *see supra*, it would seem apparent that an agency may not render the final unreviewable determination on the propriety of its own actions under the law in a dispute with another person.

51. As Respondent points out, Hamamoto was sued "in her official capacity as the only defendant" and "[a] suit against a state official acting in his [or her] official capacity, is essentially a

suit against the State." *Kaho'ohanohano*, 114 Hawai'i at 337, 162 P.3d at 731.

52. For the reasons discussed *supra*, HRS chapter 103F does provide for a private right of action, and the ICA erred in concluding that it did not.

53. Petitioner maintains that *Jeyte* decided there was a private right of action found by this court pursuant to the *STLA* "for a landlord damaged due to negligent investigation of a housing discrimination complaint by the Hawaii Civil Rights Commission (HCRC)." In deciding that the landlord defendants' counterclaim against the HCRC for negligent investigation should not be

Here, there is no private analog to Petitioner's claim to support a waiver of the State's immunity for purposes of the STLA. Petitioner does not identify circumstances under which a private party could be sued for negligently applying the law, rules, or an RFP in awarding a government contract.

## XII.

Regarding its third question, Petitioner urges that HRS §§ 602–5(6) [54] and 603–21.9 afford a court "inherent powers" to review agency action, and the ICA erred in determining that no inherent power exists. Respondent counters that a court must have jurisdiction before it may provide a remedy. According to Respondent, HRS § 603–21.9 is an " 'enumeration of the inherent powers conferred on our circuit courts by the constitution[,]' " and "does not, by itself, confer jurisdiction that does not otherwise exist." (Quoting *Moriwake*, 65 Haw. at 55, 647 P.2d at 712.) Respondent charges that Petitioner's claim of "inherent" power to review agency actions "is an invitation for a circuit court to exceed its jurisdiction[,]" is contrary to the plain language of HRS §§ 603–21.5 and 603–21.7, that do establish jurisdiction.

As to Petitioner's third question, respectfully, the ICA erred in two respects. First, the ICA suggested that a court cannot have inherent powers to review an agency decision under HRS § 603–21.9(6) where a statute limits review exclusively to an agency body. *See Hamamoto*, 125 Hawai'i at 207–08, 257 P.3d at 220–21. But, as construed, HRS chapter 103F does not limit review exclusively to an administrative body.

Second, the ICA determined that *Kaina v. Gellman*, 119 Hawai'i 324, 197 P.3d 776 (App. 2008), "clarified" that HRS § 603–21.9(6) "gives the courts 'the inherent power and

authority to control the litigation process before them and to curb abuses and promote fair process including, for example, the power to impose sanctions for abusive litigation practices.' " *Hamamoto*, 125 Hawai'i at 208, 257 P.3d at 221 (quoting *Gellman*, 119 Hawai'i at 330, 197 P.3d at 782).

To the extent the ICA's opinion limits the inherent powers of the courts "to controlling the litigation process before them," respectfully, the ICA opinion is incorrect. But, inasmuch as this opinion concludes that HRS chapter 103F does not prohibit judicial review, it need not be decided whether the court had the inherent power to review the DOE's decision and the legality of its actions.

## XIII.

In conclusion, as to Petitioner's first question, the delegation of judicial power to an administrative agency raises serious questions regarding the doctrine of separation of powers, when the legislature precludes judicial review of the agency's decision in the agency's own dispute with another party. Inasmuch as HRS chapter 103F, namely HRS §§ 103F–502(c) and 103F504, as construed, does not prohibit judicial review, the delegation of judicial power to the DOE did not violate the doctrine of separation of powers. Accordingly, as to Petitioner's first question, HRS chapter 103F is not unconstitutional. However, with respect to the second question raised, Petitioner cannot maintain a negligence action against Respondent for allegedly failing to exercise due care in applying the statutes and regulations in awarding the government contract, inasmuch as "no private analog exists" for Petitioner's claim. Therefore, "[t]he State[ ] . . . remains immune from liability" under the STLA. *Kaho'ohanohano*, 117 Hawai'i at 282, 178 P.3d at 558. Finally, as to Petitioner's third

dismissed, this court said that "the investigation of a complaint [by the HCRC] does not entail a broad policy decision immune from suit under the discretionary function exception," 88 Hawai'i at 89, 962 P.2d at 348, and "constru[ed] the counterclaim as a common law tort action for negligence." *Id.* at 91, 962 P.2d at 350. Hence, unlike in the instant case, this court decided there was, in effect, a private analog in *Jeyte* by virtue of the common law, for the tort action against the State.

**54.** Apparently, Petitioner is referring to HRS § 602–5(5) (Supp.2005), which gives the supreme court jurisdiction to "make or issue any order or writ necessary or appropriate in aid of its jurisdiction, and in such case, any justice may issue a writ or an order to show cause returnable before the supreme court[.]"

question, the ICA erred in two respects, *see supra*, but it need not be decided whether the courts of this state have the inherent power to review the legality of the DOE's actions since it has been determined that HRS chapter 103F does not preclude judicial review. Therefore, based on the foregoing, the ICA's June 16, 2011 Judgment and the court's March 4, 2009 Judgment are vacated and the case is remanded to the court for further proceedings consistent with this opinion.

Opinion by RECKTENWALD, C.J., Concurring in Part and Dissenting in Part, in Which NAKAYAMA, J., Joins.

I respectfully dissent from the majority's conclusion that agency decisions on protests regarding the procurement of health and human services are reviewable pursuant to the declaratory judgment statute, Hawai'i Revised Statutes (HRS) § 632–1.[1] As set forth below, I would hold that the legislature clearly intended to preclude judicial review of these protest decisions under the health and human services procurement code, HRS chapter 103F. I would further hold that preclusion of judicial review does not raise separation of powers concerns in the circumstances presented here. Because the legislature has the power to establish the jurisdiction of the courts, *see* Haw. Const. art. VI, § 1 ("The several courts shall have original and appellate jurisdiction as provided by law[.]"), the legislature may, with certain limitations described *infra*, exclude agency decisions from judicial review.

Finally, I note that the majority's conclusion that protest decisions are reviewable under the declaratory judgment statute undermines this court's caselaw concerning HRS § 91–14, which generally limits judicial review of administrative agency action to decisions and orders in contested cases, unless review is otherwise provided by law. Additionally, this conclusion will introduce uncertainty into the procurement of health and human services contracts, and will delay the prompt and final resolution of disputes involving those contracts. In contrast to HRS

chapter 103F, which provides that a protest must be filed within five working days, and a request for reconsideration must be filed within five working days of the written protest decision, HRS §§ 103F–501 and 103F–502, the majority's approach will permit procurement decisions to be challenged much later under the more generous statutes of limitations applicable to declaratory judgment actions.

Based on the foregoing, I would affirm the judgment of the Intermediate Court of Appeals (ICA), which affirmed the Circuit Court of the First Circuit's (circuit court) March 4, 2009 judgment in favor of Patricia Hamamoto, in her official capacity as Superintendent of Education, and against Alaka'i Na Keiki, Inc. (ANK).

## I. Background

On October 12, 2004, the Department of Education (DOE) issued a request for proposals (RFP) pursuant to HRS chapter 103F, seeking proposals to provide "intensive instructional support services to eligible students in need of such services" from July 1, 2005 through June 30, 2006. ANK submitted a proposal under the RFP, but its proposal was not selected by the DOE.

ANK protested the DOE's decision on three grounds: (1) the Proposal Evaluators "ignor[ed] or fail[ed] to consider express language in the Proposal and the RFP"; (2) the RFP did not "establish criteria for justifying a multiple contract award" as allegedly required under the applicable statute and administrative rules; and (3) the DOE did not provide ANK "reasonable discovery" following ANK's notice of protest. On August 9, 2005, Christian H. Butt, "Procurement and Contracts Specialist" for the DOE, denied the protest. ANK submitted a request for reconsideration. On August 25, 2005, Assistant Superintendent Rae M. Loui denied the request for reconsideration.

ANK filed its complaint in the instant case on September 16, 2005, and subsequently

---

1. However, I concur in the majority's conclusion that sovereign immunity bars Alaka'i Na Keiki's negligence claim. Majority opinion at 286–87, 277 P.3d at 1011–12.

filed a first and second amended complaint.[2] ANK alleged four counts. In Count I, ANK asserted that the circuit court had express and inherent powers to review the DOE's actions pursuant to article VI, section 1 of the Hawai'i Constitution[3] and HRS § 603-21.9.[4] ANK asserted that the circuit court should "utilize the criteria for judicial review" in HRS § 91-14[5] to evaluate the DOE's actions, and should vacate the DOE's decision on ANK's protest based on alleged errors in the protest procedures. Count II sought a declaration that HRS chapter 103F, as applied to the DOE, is unconstitutional or invalid because it delegates judicial power to an administrative agency and permits the DOE to adjudicate the propriety of its own actions. Count II also sought a declaration that the DOE acted unlawfully in the contract award and protest processes. Count III alleged that the DOE acted negligently in the contract award and protest processes. Finally, Count IV sought to enjoin the DOE from continuing to administer contracts awarded pursuant to HRS chapter 103F, and sought to have a special master appointed to oversee health and human services procurement until defects in HRS chapter 103F and the Hawai'i Administrative Rules (HAR) could be cured. Alternatively, ANK sought award of the contract under the RFP at issue in the instant case.

On May 9, 2008, Hamamoto moved for judgment on the pleadings or in the alternative for summary judgment. Also on May 9, 2008, ANK moved for summary judgment. The circuit court denied ANK's motion for summary judgment, and granted summary judgment in favor of Hamamoto. The circuit court entered judgment in favor of Hamamoto and against ANK on March 4, 2009.

On appeal, the ICA concluded that HRS chapter 103F does not allow for judicial review. *Alakai'i Na Keiki, Inc. v. Hamamoto*, 125 Hawai'i 200, 206, 257 P.3d 213, 219 (App. 2011). The ICA further determined that it is constitutional for the legislature to preclude judicial review of chapter 103F protest proceedings.[6] *Id.* at 205-07, 257 P.3d at 218-20. Accordingly, the ICA affirmed. *Id.* at 210, 257 P.3d at 223.

2. ANK also appealed the denial of its request for reconsideration to the circuit court pursuant to HRS chapter 91. *Alaka'i Na Keiki, Inc. v. Hamamoto (Alaka'i I )*, No. 27559, 113 Hawai'i 210, 2007 WL 158980 (Haw. Jan.22, 2007) (SDO). The circuit court dismissed for lack of jurisdiction. *Id.* at *1. This court affirmed on the ground that the protest proceeding did not constitute a "contested case" as required under HRS § 91-14. *Id.* at *2.

3. Article VI, section 1 provides:

The judicial power of the State shall be vested in one supreme court, one intermediate appellate court, circuit courts, district courts and in such other courts as the legislature may from time to time establish. The several courts shall have original and appellate jurisdiction as provided by law and shall establish time limits for disposition of cases in accordance with their rules.

4. HRS § 603-21.9 (1993) provides in relevant part:

The several circuit courts shall have power:
(6) To make and award such judgments, decrees, orders, and mandates, issue such executions and other processes, and do such other acts and take such other steps as may be necessary to carry into full effect the powers which are or shall be given to them by law or for the promotion of justice in matters pending before them.

5. HRS § 91-14(g) (1993) provides:

Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
(1) In violation of constitutional or statutory provisions; or
(2) In excess of the statutory authority or jurisdiction of the agency; or
(3) Made upon unlawful procedure; or
(4) Affected by other error of law; or
(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

6. The ICA also rejected ANK's argument that the circuit court had the inherent power to review the protest decision, and concluded that ANK could not proceed on its tort claim because the legislature had not created a private right of action under chapter 103F. *Id.* at 208-09, 257 P.3d at 221-222.

## II. Discussion

### A. The legislature clearly intended to preclude judicial review of protests brought pursuant to HRS chapter 103F

ANK, Hamamoto, and the ICA are in agreement that chapter 103F does not allow for judicial review. *See id.* at 206, 257 P.3d at 219. As explained below, when the legislature adopted chapter 103F, it specifically declined to bring health and human services procurement under the general Public Procurement Code, chapter 103D, and instead created a new chapter that did not contain chapter 103D's detailed provisions concerning judicial review. Because the legislature specifically declined to apply the provisions of chapter 103D to health and human services procurement, *see* HRS § 103F–104 (Supp.2008) ("Contracts to purchase health and human services required to be awarded pursuant to this chapter shall be exempt from the requirements of chapter 103D, unless a provision of this chapter imposes a requirement of chapter 103D on the contract or purchase."), the absence of judicial review provisions in chapter 103F evidences the legislature's intent to preclude judicial review under that chapter, *see State v. Ribbel,* 111 Hawai'i 426, 430, 142 P.3d 290, 294 (2006) ("Where a statute with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intent existed."). I therefore respectfully disagree with the majority's conclusion that judicial review is not prohibited by chapter 103F. Majority opinion at 279–81, 277 P.3d at 1004–06.

Chapter 103D, the Hawaii Public Procurement Code applies "to all procurement contracts made by governmental bodies[,]" HRS § 103D–102 (Supp.2008), while chapter 103F, the health and human services procurement code, specifically applies "to all contracts made by state agencies . . . to provide health or human services to Hawaii's residents[,]" HRS § 103F–101 (Supp.2008). The health and human services procurement code provides that the protest procedures and remedies set forth in chapter 103F "shall be the exclusive means available for persons aggrieved in connection with the award of a contract to resolve their concerns." HRS § 103F–504 (Supp.2008). Protests concerning an award of a health and human services contract may be submitted to the head of the purchasing agency, as follows:

> (a) A person who is aggrieved by an award of a contract may protest a purchasing agency's failure to follow procedures established by this chapter, rules adopted by the policy board, or a request for proposals in selecting a provider and awarding a purchase of health and human services contract, provided the contract was awarded under section 103F–402 or 103F–403. Amounts payable under a contract awarded under section 103F–402 or 103F–403, and all other awards of health and human services contracts may not be protested and shall be final and conclusive when made.

HRS § 103F–501 (Supp.2008).

A protesting party may seek reconsideration of the decision of the head of the purchasing agency, as follows:

> (a) A request for reconsideration of a decision of the head of the purchasing agency under section 103F–501 shall be submitted to the chief procurement officer not later than five working days after the receipt of the written decision, and shall contain a specific statement of the factual and legal grounds upon which reversal or modification is sought.
>
> (b) A request for reconsideration may be made only to correct a purchasing agency's failure to comply with section 103F–402 or 103F–403, rules adopted to implement the sections, or a request for proposal, if applicable.
>
> (c) The chief procurement officer may uphold the previous decision of the head of the purchasing agency or reopen the protest as deemed appropriate.
>
> (d) *A decision under subsection (c) shall be final and conclusive.*

HRS § 103F–502 (Supp.2008) (emphasis added).

Chapter 103D similarly provides that "[t]he procedures and remedies provided for

in this part, and the rules adopted by the policy board, shall be the exclusive means available for persons aggrieved in connection with the solicitation or award of a contract, a suspension or debarment proceeding, or in connection with a contract controversy, to resolve their claims or differences." HRS § 103D–704 (1993 & Supp.2008). Chapter 103D further provides that "[a]ny actual or prospective bidder, offeror, or contractor who is aggrieved in connection with the solicitation or award of a contract may protest to the chief procurement officer or a designee as specified in the solicitation." HRS § 103D–701(a). The aggrieved bidder, offeror, or contractor may seek further review of the chief procurement officer's decision before a hearings officer of the Department of Commerce and Consumer Affairs (DCCA). HRS § 103D–709(a) (Supp.2008). Significantly, the hearings officer "shall have power to issue subpoenas, administer oaths, hear testimony, find facts, make conclusions of law, and issue a written decision not later than forty-five days from the receipt of the request [for further review], *that shall be final and conclusive unless a person or governmental body adversely affected by the decision commences an appeal* [.]" HRS § 103D–709(b) (Supp.2008) (emphasis added). Chapter 103D also contains detailed procedural provisions that govern the timing and standard of judicial review. HRS § 103D–710 (Supp. 2008).

In sum, HRS § 103F–502 provides only that the reconsideration decision of the chief procurement officer "shall be final and conclusive." I agree with the majority that the words "final and conclusive," standing alone, might not be sufficient to evidence a clear intent to preclude judicial review. Majority opinion at 279–80, 277 P.3d at 1004–05. However, when the phrase "final and conclusive" in HRS § 103F–502 is viewed alongside the language of HRS § 103D–709(b), the legislature's intent to preclude judicial review is clear. Again, in contrast to HRS § 103F–502, which provides only that the reconsideration decision of the chief procurement officer "shall be final and conclusive[,]" HRS

§ 103D–709(b) provides that the reconsideration decision of the DCCA hearings officer "shall be final and conclusive *unless a person or governmental body adversely affected by the decision commences an appeal* [.]" (Emphasis added). *Ribbel,* 111 Hawai'i at 430, 142 P.3d at 294 ("[T]he omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intent existed."). In addition, chapter 103F does not contain *any* provisions governing judicial review. *Compare* chapter 103F *with* HRS § 103D–710.

Moreover, the legislative history of chapter 103F confirms that the legislature specifically intended to omit the appeal and judicial review provisions contained in chapter 103D. *See First Ins. Co. of Hawaii v. A & B Props.,* 126 Hawai'i 406, 415, 271 P.3d 1165, 1174 (2012) (noting that, where the language of a statute is ambiguous, "we may look to the statute as a whole and its legislative history for guidance in construing the language in question."). Accordingly, a review of the historical context in which both chapter 103F and chapter 103D arose is instructive.

Article VII, section 4 of the Hawai'i Constitution was adopted in 1978, and provides the foundation for appropriating public funds to private entities. Haw. Const. art. VII, § 4 ("No grant of public money or property shall be made *except pursuant to standards provided by law.*") (emphasis added). In 1981, cognizant of the 1978 constitutional amendment, the legislature adopted a statutory regime to govern three types of appropriations: grants, subsidies, and purchase of service.[7] 1981 Haw. Sess. Laws Act 207, § 1 at 394. Act 207 was subsequently codified as HRS chapter 42. HRS chapter 42 (Supp.1981). Under chapter 42, potential providers submitted proposals for review by the appropriate agency. HRS § 42–4(b)–(e) (Supp.1981). The agency's recommended proposal would be included in the executive or judiciary budget for consideration by the legislature, HRS § 42–5(a) (Supp.1981), or would be submitted by way of a separate bill, HRS § 42–6(a)

---

7. However, prior to Act 207, the procurement of public works construction contracts was already governed by portions of HRS chapter 103. *See,* *e.g.,* HRS §§ 103–22, 103–25 through 103–32 (1976).

(Supp.1981). Chapter 42 did not provide for a protest procedure or an appeals process. *See* HRS chapter 42 (Supp.1981).

In 1991, the legislature repealed chapter 42 and replaced it with chapter 42D.1991 Haw. Sess. Laws Act 335, §§ 1, 15 at 1047–55, 1060. Chapter 42D included new standards and procedures for the award of purchase of service contracts, which required that agencies identify and assess the need for services, submit a recommended budget to the legislature, and advertise for proposals upon appropriation of lump sum funds.[8] HRS §§ 42D–21 through 42D–24 (Supp. 1991). In addition, each agency was required to establish an appeals process to reconsider any recommendations for funding made by the agency. HRS § 42D–6 (Supp. 1991).

Chapter 42D was amended in 1992 to include a sunset date of July 1, 1996. 1992 Haw. Sess. Laws Act 194, §§ 20 at 425. The 1992 amendments also provided for, inter alia, the establishment of two councils: the Executive Coordinating Council, which made policy recommendations to the Governor, and the Advisory Council, which made recommendations to the Executive Coordinating Council. *Id.,* codified at HRS §§ 42D–4, 42D–5 (Supp.1992). With regard to the reconsideration process, the 1992 amendments provided that:

> Requesting organizations not recommended for funding or not satisfied with the recommended level of funding may submit a written request to the executive coordinating council for reconsideration within ten days of receipt of the agency's statement of findings and recommendations. The coordinating council shall respond in writing to the requesting organi-

zation within ten days of the receipt of the written request for reconsideration.

HRS § 42D–23(d) (Supp.1992).

Chapter 42D did not otherwise provide for any form of review or appeals process.

In 1993, the legislature adopted Act 8, later codified as HRS chapter 103D, the Hawai'i Public Procurement Code. 1993 Haw. Special Sess. Laws Act 8, § 2 at 38–68. The purpose of Act 8 was to "promote economy, efficiency, and effectiveness in the procurement of goods and services[.]" H. Stand. Comm. Rep. No. S11–93, in 1993 Special Sess. House Journal, at 64. Noting that the procurement code was "vague, inconsistent, and inefficient," the legislature explicitly repealed "this piecemeal system" by deleting provisions in HRS chapter 103 that related to procurement, and establishing the Public Procurement Code under chapter 103D.[9] S. Stand. Comm. Rep. No. S8–93, in 1993 Special Sess. Senate Journal, at 39; 1993 Haw. Special Sess. Laws Act 8, §§ 25–47 at 79–80.

Nevertheless, the procurement of some purchase of service contracts continued to be governed by chapter 42D. *See* HRS § 42D–1 (1993). However, in 1996, the legislature determined that chapter 42D was no longer an effective procurement mechanism. S. Stand. Comm. Rep. No. 2075, in 1996 Senate Journal, at 1005 (noting "great consensus that the present purchase of service process under chapter 42D, HRS, is not working"). Accordingly, the legislature extended chapter 42D's sunset date to July 1, 1998, but began the process to transfer the entire purchase of service system to chapter 103D, "to provide for procurement of all services under one chapter."[10] 1996 Haw. Sess. Laws Act 310, §§ 2 and 3 at 973. Act 310 also directed the

---

8. The definition of "purchase of service" under chapter 42D did not include "services of a court-appointed attorney for an indigent, the professional services of individuals in private business or professions, and services subject to the competitive bidding requirements of chapter 103[.]" HRS § 42D–1 (Supp.1991).

9. In addition, the legislature amended the definition of "purchase of service" contained in HRS § 42D–1 to replace the reference to "chapter 103" with "chapter 103D." 1993 Haw. Special Sess. Laws Act 8, § 54 at 81; HRS § 42D–1 (1993). Accordingly, under the amendments,

"the purchase of services of a court-appointed attorney for an indigent, the professional services of individuals in private business or professions, and services subject to the competitive bidding requirements of chapter 103D" were not subject to the requirements of chapter 42D. HRS § 42D–1.

10. Provisions regarding grants and subsidies were initially retained in HRS chapter 42D, and were later recodified as HRS chapter 42F.1997 Haw. Sess. Laws Act 190, §§ 3, 7 at 359–62.

administrator of the State Procurement Office (SPO) to develop and implement a transition plan to replace the procedures previously provided under chapter 42D. *Id.* The SPO administrator was directed to submit a report to the legislature by December 31, 1996 regarding these new procedures, together with a draft of any proposed language necessary to implement the administrator's proposals. *Id.* § 4, at 974.

In its December 1996 Report to the Hawaii State Legislature, the SPO advised against the legislature's intent to include health and human services procurement in chapter 103D:

> To avoid confusion with the current State Procurement Code (Chapter 103D, HRS), we *do not* recommend that this new [purchase of service] law be placed under that chapter. The POS law should have its own stand-alone and designated chapter under the [HRS].

State Procurement Office, *Purchase of Service (POS), Act 310, Session Laws of Hawaii 1996, Report to the Hawaii State Legislature* (Dec. 1996) (hereinafter "SPO Report") at 33 (emphasis in original).

The SPO explained that its draft legislation "significantly strengthens the law yet also goes a long way to clarify, streamline, and modernize the entire process to procure health and human services." *Id.* at 34. The SPO noted that providers had complained that the existing purchase of service system contained "burdensome and sometimes duplicative bureaucratic requirements." *Id.* at 19. The SPO further noted that the existing system was

> marked by inconsistent and fragmented contract administration resulting in late contracts and delayed payments. According to providers, there have been instances in which contracts and payments have been delayed for up to six months. In one instance, there was an eleven-month delay.
>
> Such actions place an undue hardship on the providers[.]

*Id.*

The SPO also noted that various stakeholders expressed concern with regard to the reconsideration procedure, which was de-scribed as "a flawed and biased process" because the "'appeals' body consist[ed] of individuals responsible for making the original selection and funding recommendations." *Id.* at 15. Nevertheless, the SPO proposed a similar, agency-directed process for protests under the new chapter:

> Chapter 42D included a Request for Reconsideration (RFR) or "appeal" process. This reconsideration process is for service providers who are not recommended for funding or not satisfied with their recommended level of funding.
>
> The new protest and reconsideration process, proposed in the draft legislation, will be clear and uncomplicated. Under the new process, any provider who is aggrieved in connection with the award of a contract may protest in writing within five working days to the head of the purchasing agency.
>
> The head of the purchasing agency or a designee may settle and resolve a protest of an aggrieved provider by, among other things, canceling the proposed award or re-doing the selection process in compliance with the law or rules. If the protest is not resolved by mutual agreement, a written decision must be issued by the purchasing agency. The decision must state the reasons for the actions taken and inform the protesting applicant of the protester's right to further review.
>
> Reconsideration of a decision of the head of the purchasing agency regarding an award may be requested by the protesting provider organization. The request for [re]consideration must be submitted to the chief procurement officer in writing within five working days after receipt of the initial decision. The basis for a request for reconsideration is limited to a fraudulent decision or non-compliance with statutes or rules in the solicitation or award of the contract.
>
> The chief procurement officer may uphold the previous decision of the head of the purchasing agency or reopen the protest as deemed appropriate. A decision of the chief procurement officer is final.

*Id.* at 48–49.

Accordingly, although the SPO's draft legislation was apparently modeled after provi-

sions contained in chapter 103D, the SPO omitted those provisions of chapter 103D concerning judicial review. *Compare id.* at Appendix B *with* HRS chapter 103D.

In 1997, the legislature adopted the SPO's recommendation to create a separate chapter, chapter 103F, for the procurement of health and human services contracts. 1997 Haw. Sess. Laws Act 190, § 1 at 351. The legislature also adopted, with modifications, the SPO's proposed protest and reconsideration process. *See id.* Accordingly, the legislature did not import the judicial review provisions of chapter 103D into chapter 103F. *Id.*

The legislative history of chapter 103F indicates that the statute was intended to "promote greater fairness, efficiency, effectiveness, and accountability." H. Stand. Comm. Rep. No. 940, in 1997 House Journal, at 1461. The Senate Committee on Ways and Means stated:

> [T]he intent of providing *a separate process for health and human services is to ensure fair and equitable treatment of all those who apply to and are paid to provide those services.* Your Committee finds that this process will result in a simpler, standardized process for both state agencies and providers to use, and will optimize information-sharing, planning, and service delivery efforts.

S. Stand. Comm. Rep. No 1465, in 1997 Senate Journal, at 1448 (emphasis added).

Thus, the majority is correct that one of the purposes of chapter 103F was to promote fairness. Majority opinion at 280–81, 277 P.3d at 1005–06. However, in light of the history indicating that the legislature, at the SPO's recommendation, declined to incorporate provisions concerning appeal and judicial review into chapter 103F, it cannot be said that an intent to promote fairness is indicative of an intent to permit judicial review. Rather, for the foregoing reasons, chapter 103F clearly evidences the legislature's intent to preclude judicial review, and to rely upon the administrative review procedures set forth in chapter 103F to provide a fair review process.

### B. The protest procedures set forth in chapter 103F do not raise separation of powers concerns

ANK argues that, because chapter 103F does not provide for judicial review, it constitutes an unconstitutional delegation of judicial power to an executive agency in violation of article VI, section 1 of the Hawai'i Constitution and the separation of powers doctrine.

Article VI, section 1 provides:

> The judicial power of the State shall be vested in one supreme court, one intermediate appellate court, circuit courts, district courts and in such other courts as the legislature may from time to time establish. The several courts shall have original and appellate jurisdiction as provided by law and shall establish time limits for disposition of cases in accordance with their rules.

Although this provision specifically vests the courts with "[t]he judicial power of the State[,]" it further recognizes that the legislature has the power to include or exclude cases from the courts' jurisdiction by deciding whether to provide for review "by law." Haw. Const. art. VI, § 1 (stating that the courts have "original and appellate jurisdiction *as provided by law* ") (emphasis added). In addition, article III, section 1 vests the legislature with legislative power, which "is defined as the power to enact laws and to declare what the law shall be. Under this grant of authority, the legislature has the power to establish the subject matter jurisdiction of our state court system." *Sherman v. Sawyer,* 63 Haw. 55, 57, 621 P.2d 346, 348 (1980) (citation omitted). Accordingly, precluding judicial review of administrative decisions is not necessarily inconsistent with article VI, section 1.

Nevertheless, as illustrated in the cases cited by the majority, the delegation of adjudicative power to an agency may, in certain circumstances, violate the separation of powers doctrine. *See* majority opinion at 275–76, 277 P.3d at 1000–01. However, the cases cited by the majority establish that the question of whether the delegation of adjudicative power violates the separation of powers doctrine is highly fact-specific. *Commodity Futures Trading Comm'n v. Schor,* 478 U.S.

833, 851, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986) (declining to adopt "formalistic and unbending rules" for the determination of whether the delegation of adjudicative power to an agency violated the separation of powers doctrine).

Notably, all of the federal cases cited by the majority relied heavily on the distinction between the adjudication of disputes involving private rights, and those involving public rights.[11] Majority opinion at 276, 277 P.3d at 1001; *see Commodity Futures*, 478 U.S. at 853, 106 S.Ct. 3245 ("The counterclaim asserted in this litigation is a 'private' right for which state law provides the rule of decision. It is therefore a claim of the kind assumed to be at the 'core' of matters normally reserved to Article III courts."); *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 604 (Fed.Cir.1985) ("At issue is a right that can only be conferred by the government. Thus we find no constitutional infirmity ... in patent reexamination by the [Patent and Trademark Office].") (citation omitted); *Northern Pipeline*, 458 U.S. at 71–72, 102 S.Ct. 2858 ("Northern's right to recover contract damages to augment its estate is 'one of private right, that is, of the liability of one individual to another under the law as defined.'") (citation omitted). This is significant because, as the Court has explained,

> only controversies in the [public rights] category may be removed from Art. III courts and delegated to legislative courts or administrative agencies for their determination. Private-rights disputes, on the other hand, lie at the core of the historically recognized judicial power.

*Northern Pipeline*, 458 U.S. at 70, 102 S.Ct. 2858 (citations, internal quotation marks, and footnote omitted).

The Court further explained that one policy behind permitting delegation of public rights controversies is grounded in "the traditional principle of sovereign immunity, which recognizes that the Government may attach conditions to its consent to be sued." *Id.* at 67, 102 S.Ct. 2858 (citation omitted).

In the instant case, the procurement dispute did not arise between one individual and another, but rather between the government and an individual bidder. *Northern Pipeline*, 458 U.S. at 70, 102 S.Ct. 2858. Moreover, the right to protest a procurement decision is "a right that can only be conferred by the government." *Patlex Corp.*, 758 F.2d at 604. Put another way, absent the protest procedures established in chapter 103F, a disappointed bidder would have no fundamental right to protest an agency's procurement decision. It would therefore appear that a procurement protest is not "of the kind assumed to be at the 'core' of matters normally reserved to [the] courts." *Commodity Futures*, 478 U.S. at 853, 106 S.Ct. 3245.

In addition, in *Commodity Futures*, the Court noted that

> [t]he risk that Congress may improperly have encroached on the federal judiciary is obviously magnified when Congress withdraws from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty and which therefore has traditionally been tried in Article III courts, and allocates the decision of those matters to a non-Article III forum of its own creation. Accordingly, where private, common law rights are at stake, our examination of the congressional attempt to control the manner in which those rights are adjudicated has been searching.

*Id.* at 854, 106 S.Ct. 3245 (citations, internal quotation marks and brackets omitted).

There, the delegation to the agency involved a private right counterclaim, but was limited in scope, and the decision to proceed in the agency forum, rather than the court, was optional. *Id.* at 854–55, 106 S.Ct. 3245. In those circumstances, the court concluded

---

11. The United States Supreme Court has explained that
 a matter of public rights must at a minimum arise between the government and others. In contrast, the liability of one individual to another under the law as defined, is a matter of private rights.

*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 70, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (internal quotation marks, citations and footnote omitted).

that the delegation of adjudicatory power did not violate the separation of powers doctrine. *Id.* at 857, 106 S.Ct. 3245. Thus, although the Court in *Commodity Futures* acknowledged that the wholesale delegation of "the entire business of Article III courts" to non-Article III tribunals would violate the separation of powers doctrine, *id.* at 855, 106 S.Ct. 3245, it also recognized that a more narrow delegation was permissible.

In contrast, in *Northern Pipeline,* the Court held that the establishment of non-Article III Bankruptcy Courts was unconstitutional, where the Bankruptcy Court judges had "all of the 'powers of a court of equity, law, and admiralty,' except that they 'may not enjoin another court or punish a criminal contempt not committed in the presence of the judge of the court or warranting a punishment of imprisonment.'" 458 U.S. at 55, 76, 102 S.Ct. 2858. Moreover, this delegation of power was held to be unconstitutional, even though the statute provided for review of the bankruptcy judge's decision in the federal courts. *Id.* at 55, 102 S.Ct. 2858.

Respectfully, these cases do not support the majority's conclusion that separation of powers concerns arise where, as in the instant case, an administrative agency is vested with limited, but unreviewable, adjudicative power. *See* majority opinion at 277, 277 P.3d at 1002. Indeed, numerous statutes that vest an administrative agency with adjudicatory power have not been subjected to constitutional challenge on separation of powers grounds. *See, e.g., Switchmen's Union of North America v. Nat'l Mediation Bd.,* 320 U.S. 297, 301, 303, 64 S.Ct. 95, 88 L.Ed. 61 (1943) ("All constitutional questions aside, it is for Congress to determine how the rights which it creates shall be enforced.... And where no judicial review was provided by Congress this Court has often refused to furnish one even where questions of law might be involved.") (citation omitted); *Your Home Visiting Nurse Servs., Inc. v. Shalala,* 525 U.S. 449, 456, 119 S.Ct. 930, 142 L.Ed.2d 919 (1999) (statute precluded judicial review of Medicare reimbursement determination); *Fischer v. Resolution Trust Corp.,* 59 F.3d 1344, 1348 (D.C.Cir.1995) (judicial review of agency determination was precluded by statute, where agency determined that accounting firm's contract bid was ineligible due to conflict of interest); *Leistiko v. Stone,* 134 F.3d 817, 820 (6th Cir.1998) (the Civil Service Reform Act and Backpay Act precluded judicial review of adverse personnel actions); *Antonio–Cruz v. I.N.S.,* 147 F.3d 1129, 1131 (9th Cir.1998) (judicial review precluded of Attorney General's discretionary decision to deny an alien the privilege of voluntary departure, where applicable statute precluded judicial review of discretionary decisions).

Nevertheless, even where judicial review is specifically precluded, the courts retain certain core functions, including the power to determine whether a statute under which an agency is operating is constitutional, or whether an agency is acting in excess of its statutorily granted authority.[12] *See State v. Bani,* 97 Hawai'i 285, 291 n. 4, 36 P.3d 1255, 1261 n. 4 (2001) ("[T]he question as to the constitutionality of a statute is not for legislative determination, but is vested in the judiciary[.]") (citation omitted); *HOH Corp. v. Motor Vehicle Industry Licensing Bd.,* 69 Haw. 135, 143, 736 P.2d 1271, 1276 (1987)

---

12. This power would appear to derive from the inherent powers of the courts. *See State v. Moriwake,* 65 Haw. 47, 55, 647 P.2d 705, 712 (1982) (citing HRS § 603–21.9 and noting that "the inherent power of the court is the power to protect itself; the power to administer justice whether any previous form of remedy has been granted or not; the power to promulgate rules for its practice; and the power to provide process where none exists") (citations and some quotation marks omitted). Accordingly, I agree with the majority that a court's inherent powers extend beyond controlling the litigation process. Majority opinion at 287, 277 P.3d at 1012.

However, contrary to ANK's assertion, and with limited exceptions described herein, a court's inherent powers cannot confer jurisdiction in the absence of a basis for that jurisdiction in law. Haw. Const. art. VI, § 1 (stating that the courts have "original and appellate jurisdiction as provided by law"). Similarly, although this court may have a "policy favoring judicial review of administrative actions[,]" majority opinion at 279, 277 P.3d at 1004 (quoting *Matter of Hawaii Gov't Emps.' Ass'n, Local 152, AFSCME, AFL–CIO,* 63 Haw. 85, 87, 621 P.2d 361, 363 (1980) (holding that failure to designate an agency as an appellee is not a cause for dismissal)), such a policy cannot provide a basis for review where review specifically has been precluded.

("[C]onstitutionality or not in the particular circumstances is a legal question originally cognizable in the circuit court."); *see also Johnson v. Robison,* 415 U.S. 361, 368, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974) (noting, with regard to a statute precluding review of agency decisions on "question of law or fact," that "adjudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies") (citations, internal quotations marks and parenthesis omitted); *Briscoe v. Bell,* 432 U.S. 404, 408, 97 S.Ct. 2428, 53 L.Ed.2d 439 (1977) (noting that "even where the intent of Congress was to preclude judicial review, a limited jurisdiction exists in the court to review actions which on their face are plainly in excess of statutory authority") (internal quotation marks and citation omitted); *Leedom v. Kyne,* 358 U.S. 184, 188, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958) (permitting review of alleged unlawful action "made in excess of [the Board's] delegated powers and contrary to a specific prohibition in the Act"); 5 Jacob A. Stein, Glenn A. Mitchell, & Basil J. Mezines *Administrative Law* § 44.02 at 44–30 to 44–33 (2011) ("[T]he Supreme Court held that even when a statute cuts off judicial review, review will be afforded if the agency exceeds its statutory authority. The Court has also held that review may not be dispensed with, despite a specific statutory provision, when what is being challenged is the constitutionality of a statute under which the agency is acting.").

In this regard, *New York City Department of Environmental Protection v. New York City Civil Service Commission,* 78 N.Y.2d 318, 574 N.Y.S.2d 664, 579 N.E.2d 1385 (1991), cited by the majority, is instructive. *See* majority opinion at 281–82, 277 P.3d at 1006–07. There, the New York Court of Appeals concluded that the merits of a determination by the Civil Service Commission in an employee disciplinary proceeding were "not reviewable in the courts" based on the plain language of the applicable statute. *Id.,* 574 N.Y.S.2d 664, 579 N.E.2d at 1386. However, the court further noted that:

> however explicit the statutory language, judicial review cannot be completely precluded. First, if a constitutional right is implicated, some sort of judicial review must be afforded the aggrieved party.... Second, judicial review is mandated when the agency has acted illegally, unconstitutionally, or in excess of its jurisdiction.

*Id.,* 574 N.Y.S.2d 664, 579 N.E.2d at 1387.

However, the court noted that the scope of available review was "extremely narrow": "Once courts have determined that an agency has not acted in excess of its authority or in violation of the Constitution or the laws of this State, judicial review is completed." *Id.,* 574 N.Y.S.2d 664, 579 N.E.2d at 1388. The court determined that, in the case before it, there was "no showing that [the Commission's action] was unconstitutional, illegal, or outside the Commission's jurisdiction[,]" and that "the substance of the Commission's determination ... is unreviewable in the courts." *Id.*

Here, ANK's protest did not assert that the DOE's actions in awarding the contract were unconstitutional, or that the DOE was acting outside of its statutory authority. Rather, ANK protested the award of the contract on three grounds: (1) the Proposal Evaluators "ignor[ed] or fail[ed] to consider express language in the Proposal and the RFP"; (2) the RFP did not "establish criteria for justifying a multiple contract award" as allegedly required under the applicable statute and administrative rules; and (3) the DOE did not provide ANK "reasonable discovery" following ANK's initial notice of protest. The first of these grounds alleged that "[t]he Evaluators [f]ailed to follow evaluation criteria established by the RFP because they ignored or failed to consider express language in the RFP and express language in the Proposal that addresses the Evaluator's stated concerns." This allegation does not involve a constitutional question, nor does it assert that the DOE was acting outside of its statutory authority. Rather, it involves only the consideration of the RFP and ANK's proposal.

The second of ANK's asserted grounds alleged that the RFP "did not conform to [HRS § ] 103F–411 and HAR [§ ] 3–143–206(d)." However, ANK abandoned this claim in the circuit court.

Finally, ANK's third asserted ground alleged that the DOE violated HAR § 3–148–502 by withholding discoverable information *after* ANK filed its notice of protest. Assuming arguendo that this ground was properly raised in ANK's protest, *see* HRS § 103F–504 ("The procedures and remedies provided for in this part, and the rules adopted by the policy board, shall be the exclusive means available *for persons aggrieved in connection with the award of a contract* to resolve their concerns.") (emphasis added), it does not raise constitutional questions or allegations that the DOE was acting outside of its statutory authority. Accordingly, none of the limited exceptions to unreviewability are applicable here. *See New York City Dep't of Envtl. Prot.*, 574 N.Y.S.2d 664, 579 N.E.2d at 1387–88.

In sum, the cases cited by the majority do not establish that the DOE's unreviewable authority to determine ANK's chapter 103F protest violates the separation of powers doctrine. Rather, the Hawai'i Constitution provides the legislature with the authority to determine the jurisdiction of the courts, subject to the limitations described above. Haw. Const. art. VI, § 1. The legislature permissibly exercised that power in precluding judicial review of this protest under chapter 103F.

## C. Relief is not available under the declaratory judgment statute

The declaratory judgment statute, HRS § 632–1,[13] provides that, "[w]here ... a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed[.]" Accordingly, although HRS § 632–1 "generally endorses declaratory relief in civil cases, it nonetheless, disallows such relief where a statute provides a special form of remedy for a specific type of case." *Travelers Ins. Co. v. Hawaii Roofing, Inc.*, 64 Haw. 380, 386, 641 P.2d 1333, 1337 (1982) (internal quotation marks, ellipsis, brackets, and footnote omitted). "[W]here such a statutory remedy exists, declaratory judgment does not lie." *Punohu v. Sunn*, 66 Haw. 485, 486, 666 P.2d 1133, 1134 (1983).

Here, chapter 103F provides a "special form of remedy" for persons "aggrieved in connection with the award of a contract to resolve their concerns[,]" *see* HRS § 103F–504, specifically, the protest and reconsideration procedures set forth in HRS §§ 103F–501 and 103F–502. Moreover, the legislature provided that these protest and reconsideration procedures are the "exclusive means" for such aggrieved persons to resolve their concerns. HRS § 103F–504. Accordingly, ANK cannot maintain a declaratory judgment action to challenge the DOE's denial of its chapter 103F protest.

---

**13.** In its entirety, HRS § 632–1 (1993) provides:

In cases of actual controversy, courts of record, within the scope of their respective jurisdictions, shall have power to make binding adjudications of right, whether or not consequential relief is, or at the time could be, claimed, and no action or proceeding shall be open to objection on the ground that a judgment or order merely declaratory of right is prayed for; provided that declaratory relief may not be obtained in any district court, or in any controversy with respect to taxes, or in any case where a divorce or annulment of marriage is sought. Controversies involving the interpretation of deeds, wills, other instruments of writing, statutes, municipal ordinances, and other governmental regulations, may be so determined, and this enumeration does not exclude other instances of actual antagonistic assertion and denial of right.

Relief by declaratory judgment may be granted in civil cases where an actual controversy exists between contending parties, or where the court is satisfied that antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation, or where in any such case the court is satisfied that a party asserts a legal relation, status, right, or privilege in which the party has a concrete interest and that there is a challenge or denial of the asserted relation, status, right, or privilege by an adversary party who also has or asserts a concrete interest therein, and the court is satisfied also that a declaratory judgment will serve to terminate the uncertainty or controversy giving rise to the proceeding. *Where, however, a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed;* but the mere fact that an actual or threatened controversy is susceptible of relief through a general common law remedy, a remedy equitable in nature, or an extraordinary legal remedy, whether such remedy is recognized or regulated by statute or not, shall not debar a party from the privilege of obtaining a declaratory judgment in any case where the other essentials to such relief are present.

(Emphasis added).

Nevertheless, the majority concludes that ANK may bring suit under the declaratory judgment statute because chapter 103F provides a private right of action. *See* majority opinion at 285–86, 277 P.3d at 1010–11. This court has stated that, under the declaratory judgment statute, "there must be some 'right' at issue in order for the court to issue relief." *Rees v. Carlisle,* 113 Hawai'i 446, 458, 153 P.3d 1131, 1143 (2007). To determine whether a statute provides a "right upon which a plaintiff may seek relief[,]" this court considers (1) whether "the plaintiff is one of the class for whose especial benefit the statute was enacted"; (2) whether there is "any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one"; and (3) whether a private right of action is "consistent with the underlying purposes of the legislative scheme[.]" *Id.* (citation, internal quotation marks, emphasis and brackets omitted). Of these three factors, "legislative intent appears to be the determinative factor." *Id.* (citation omitted).

Here, as noted *supra* in Part II(A), chapter 103F clearly evidences the legislature's intent to preclude judicial review. Based on the legislature's intent to deny such a remedy, it is clear that the legislature did not intend to create a private right of action for disappointed bidders under chapter 103F. Accordingly, I respectfully disagree with the majority's conclusion that the legislature's intent to provide for a "fair and equitable" procurement process is sufficient to demonstrate the legislature's intent to create a private right of action under chapter 103F. Majority opinion at 285–86, 277 P.3d at 1010–11 (quoting 1997 Haw. Sess. Laws Act 190, § 1 at 351).

Respectfully, permitting an original action under the declaratory judgment statute in these circumstances would undercut the limitations on judicial review set out in HRS § 91–14.[14] HRS § 91–14 governs judicial review of agency decisions following a contested case hearing, and is the primary vehicle for judicial review of agency action. However, HRS § 91–14 does not "prevent resort to other means of review, redress, relief, or trial de novo, including the right of trial by jury, *provided by law*." HRS § 91–14(a) (emphasis added). Thus, for example, judicial review of the decision of a DCCA hearings officer is available under HRS § 103D–710, even though the decision was not subject to the contested case requirements of chapter 91. *See* HRS § 103D–704 ("The contested case proceedings set out in chapter 91 shall not apply to protested solicitations and awards, debarments or suspensions, or the resolution of contract controversies.").

The majority concludes that the declaratory judgment statute similarly provides for judicial review. Majority opinion at 285–86, 277 P.3d at 1010–11. Respectfully, however, the declaratory judgment statute differs markedly from a statute such as HRS § 103D–701, in that it does not specifically address judicial review of agency decisions, but rather applies to, inter alia, "civil cases where an actual controversy exists between contending parties[.]" HRS § 632–1. In addition, the declaratory judgment statute does not provide procedures for seeking judicial review of agency action, nor does it address the standard of review for these decisions.

Moreover, the conclusion that review is available pursuant to HRS § 632–1 is contrary to our prior caselaw, which has denied judicial review of agency action where there is no provision for such review in our statutes. For example, in *Ko'olau Agricultural Co., Ltd. v. Commission on Water Resource Management,* 83 Hawai'i 484, 493, 927 P.2d 1367, 1376 (1996), this court specifically rejected the argument that declaratory relief was available, where the statute evidenced the legislature's intent to provide for an appeal of the agency decision, but did not specifically provide procedures or jurisdiction for an appeal. There, an agricultural company sought to preserve its purported rights in an aquifer by challenging the Commission on

---

14. HRS § 91–14(a) (1993) provides in relevant part:

> Any person aggrieved by a final decision and order in a contested case or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review thereof under this chapter[.]

Water Resource Management's designation of the aquifer as a ground water management area (WMA). *Id.* at 487, 927 P.2d at 1370. The company brought its challenge by way of three separate proceedings: a declaratory judgment action, an untimely direct appeal to this court, and an untimely administrative appeal to the circuit court. *Id.* Both the direct and administrative appeals were dismissed, leaving only the declaratory judgment action. *Id.* The circuit court then dismissed the declaratory judgment action for lack of jurisdiction. *Id.* at 487–88, 927 P.2d at 1370–71.

On appeal, this court noted that, "where a statutory avenue for appeal of an agency decision is available, an original action for declaratory judgment does not lie." *Id.* at 493, 927 P.2d at 1376. There, the statute at issue provided that the agency decision "shall be final unless judicially appealed." *Id.* at 492, 927 P.2d at 1375 (quoting HRS § 174C–46). This court noted that, although this language indicated that "the legislature intended an appeal as the exclusive means of obtaining judicial review of the Commission's decision . . . , we can ascertain no provision in the Code that describes the mechanics of such an appeal or that confers jurisdiction on any court." *Id.* at 493, 927 P.2d at 1376. This court concluded that, "if the legislature intended to provide for an appeal of a WMA designation, as we believe it did, it will have to amend the Code to specify the procedures and provide jurisdiction for an appeal." *Id.* However, even absent a specific statutory remedy, this court concluded that declaratory judgment was nonetheless unavailable, because the statute required the legislature to "specifically provide" for an appeal. *Id.* Absent such a provision, this court concluded that "a WMA designation is not judicially reviewable." *Id.* at 493–94, 927 P.2d at 1376–77 ("[I]f an appeal is available, it is the exclusive avenue for judicial review of a WMA designation; if no appeal is actually provided, the Commission has exclusive jurisdiction and a WMA designation is not judicially reviewable.").

In addition, in *Bush v. Hawaiian Homes Commission*, 76 Hawai'i 128, 131, 870 P.2d 1272, 1275 (1994), this court concluded that the circuit court did not have jurisdiction to review an agency appeal because a contested case hearing did not precede the appeal, as required under HRS § 91–14. There, native Hawaiian beneficiaries of the Hawaiian Homes Commission Act (HHCA) contested the validity of third party agreements that allowed non-Hawaiian farmers to use HHCA land that was leased to native Hawaiian lessees. *Id.* at 132, 870 P.2d at 1276. The beneficiaries requested a contested case hearing on the issue, but the Commission denied the request and approved the third party agreements. *Id.* at 132–33, 870 P.2d at 1276–77. The beneficiaries appealed to the circuit court, which dismissed for lack of jurisdiction. *Id.* at 133, 870 P.2d at 1277.

On further appeal, this court considered whether the beneficiaries "were entitled to obtain judicial review of the Commission's determinations[,]" and concluded that judicial review was not available because a contested case hearing did not occur and, in any event, a contested case hearing was not required by law. *Id.* at 133–36, 870 P.2d at 1277–78. Accordingly, this court determined that review of the denial of the beneficiaries' request for a contested case hearing was "unattainable due to a lack of subject matter jurisdiction." *Id.* at 136, 870 P.2d at 1280. Although this court noted that HRS § 91–14 did not preclude "resort to other means of review, redress, relief, or trial de novo, including the right of trial by jury, *provided by law*," it did not fashion a new remedy for the beneficiaries under the declaratory judgment statute. *Id.* at 137, 870 P.2d at 1281 (emphasis in original). Rather, this court affirmed the circuit court's dismissal of the beneficiaries' appeal. *Id.*

Similarly, in *Aha Hui Malama O Kaniakapupu v. Land Use Commission (Kaniakapupu)*, 111 Hawai'i 124, 139 P.3d 712 (2006), this court again determined that the circuit court did not have jurisdiction to review an agency appeal because no contested case hearing occurred. There, a hui formed to care for Kaniakapupu (the historical ruins of the royal summer cottage of Kamehameha III) sought an order to show cause from the Land Use Commission (LUC) as to why adjoining land should not be reverted from its

current classification as an urban district to its prior classification as a conservation district. *Id.* at 126–28, 139 P.3d at 714–16. The hui argued that the classification should be reverted because an owner of the adjoining land violated a condition that was imposed by the LUC when the land was initially converted to an urban district. *Id.* at 127, 139 P.3d at 715. The LUC held a hearing on the motion, but the motion was denied. *Id.* at 128, 139 P.3d at 716. The circuit court dismissed the appeal on the ground that the hearing was not a contested case hearing, and accordingly the circuit court lacked jurisdiction. *Id.* at 129–31, 139 P.3d at 717–19.

This court agreed and, as in *Bush,* affirmed the dismissal of the appeal. *Id.* at 134, 139 P.3d at 722. This court acknowledged the hui's argument that, absent judicial review of the decision to deny a contested case hearing, "any agency could arbitrarily and capriciously deny anyone a hearing at any time, regardless of whether such hearing were required by law, and the aggrieved party could never obtain judicial review of such denial." *Id.* at 137, 139 P.3d at 725. However, rather than creating a new remedy to address this concern under the declaratory judgment statute, this court noted that there was no procedural vehicle for a party to request a contested case hearing on an order to show cause and, accordingly, the hui's assertion was without merit. *Id.; cf. Kaleikini v. Thielen,* 124 Hawai'i 1, 16, 237 P.3d 1067, 1082 (2010) (permitting judicial review of the denial of a contested case hearing where, inter alia, there was a "procedural vehicle" to obtain a contested case hearing and the party requested such a hearing).

However, in contrast to these cases, the majority opinion would appear to allow for judicial review under the declaratory judgment statute of *any* final agency action, even where the legislature has not provided for review of that action in an administrative forum or the courts. *See* majority opinion at 283–84, 277 P.3d at 1008–09. In so doing,

the majority opinion appears to erode the principles established in our caselaw concerning HRS § 91–14, which indicate that judicial review is available only following contested case hearings, or where, as in chapter 103D, judicial review is otherwise "provided by law." *See Ko'olau Agricultural,* 83 Hawai'i at 493, 927 P.2d at 1376; *Bush,* 76 Hawai'i at 133–37, 870 P.2d at 1277–81; *Kaniakapupu,* 111 Hawai'i at 137, 139 P.3d at 725.

In addition, review of administrative decisions is generally subject to strict time limitations. *See* HRS § 103D–712(b) ("Requests for judicial review ... shall be filed ... *within ten calendar days* after the issuance of a written decision by the hearings officer[.]"); *see also* HRS § 91–14(b) ("Except as otherwise provided herein, proceedings for review shall be instituted ... *within thirty days* after service of the certified copy of the final decision and order of the agency[.]"). However, HRS § 632–1 does not impose any time limitations on declaratory judgment actions. It would appear that a declaratory judgment action challenging an agency's reconsideration decision on a procurement protest would be subject to the general statutes of limitations set forth in HRS chapter 657, which may be as long as six years.[15] *See* HRS § 657–1(4) (1993) (providing a six year statute of limitations for "[p]ersonal actions" not otherwise covered by the laws of the State). In the circumstances presented here, permitting review of a protest decision under the declaratory judgment statute is contrary to the legislature's intent to promote efficiency in the procurement process. *See* H. Stand. Comm. Rep. No. 940, in 1997 House Journal, at 1461 (noting that the public procurement policy later codified in 103F would "promote greater fairness, *efficiency,* effectiveness, and accountability") (emphasis added); *CARL Corp. v. State of Hawai'i, Dep't of Educ.,* 85 Hawai'i 431, 447, 946 P.2d 1, 17 (1997) (recognizing "the obvious need for expeditious review of public contracting decisions" under 103D).

The majority's reliance on the declaratory judgment statute to provide judicial review of

---

15. Respectfully, I do not believe that the potential for mootness is a sufficient incentive to ensure the prompt filing of challenges, particularly with regard to long-term contracts for purchase of services. Majority opinion at 284 n. 46, 277 P.3d at 1009 n. 46.

procurement protests will open up numerous administrative decisions to judicial review, including decisions such as those in *Ko'olau Agricultural, Bush,* and *Kaniakapupu,* without a statute specifically providing jurisdiction, procedures, or standards of review. Accordingly, I respectfully dissent.

### III. Conclusion

The Hawai'i constitution vests the courts with the judicial power of the state, but recognizes that the legislature has the authority to determine the courts' jurisdiction. Under that framework, the legislature has the power to provide for the administrative resolution of certain disputes between the government and an individual. However, that authority is subject to limits. Most notably, the courts retain the authority to determine the constitutionality of statutes, or whether an administrative agency has acted in excess of its statutory authority.

The legislature exercised its authority under this framework and determined that disappointed bidders for health and human services contracts would be entitled to administrative, but not judicial, review of the procurement decisions of the contracting agency. HRS §§ 103F–501, 103F–502 and 103F–504. In the legislature's view, such a process best provided for the fair and efficient award of these important contracts. In reaching that conclusion, the legislature respected the limitations placed upon it by our constitution and the principle of separation of powers. Moreover, the dispute at issue here does not involve a determination of the constitutionality of the governing statute, or a claim that the agency was acting in excess of its statutory powers. Thus, ANK is not entitled to judicial review of the administrative denial of its request for reconsideration.

Respectfully, the result reached by the majority undermines well-settled Hawai'i precedent governing when administrative determinations are subject to judicial review, including the decisions in *Ko'olau Agricultural, Bush* and *Kaniakapupu.* Additionally, it will introduce uncertainty into the procurement of health and human services contracts. In order to promote the prompt and final resolution of disputes involving the procurement of those contracts, chapter 103F provides that a protest must be filed within five working days, and a request for reconsideration must be filed within five working days of the written protest decision. HRS §§ 103F–501 and 103F–502. However, under the majority's approach, procurement decisions will now be subject to challenge much later under the more generous statutes of limitations applicable to declaratory judgment actions.

Accordingly, I respectfully dissent from the court's holdings on those issues.